J. R. MARRIOTT, B. O. Marriott and Thomas Eugene Morehead, d/b/a B & J Excavating Company, Appellant,

v.

The CITY OF DALLAS, Appellee.

No. 21004.

Court of Appeals of Texas, Dallas.

Feb. 18, 1982.

Rehearing Denied April 2, 1982.

John E. Agnew, Carter, Jones, Magee, Rudberg, Moss & Mayes, Dallas, for appellant.

Barry R. Knight, Asst. City Atty., Dallas, for appellee.

Before CARVER, VANCE and FISH, JJ.

CARVER, Justice.

J. R. Marriott and B. O. Marriott, the owners of zoned property in the City of Dallas, and Thomas Eugene Morehead, us-

ing the tradename of B & J Excavating Company, who was excavating sand and gravel on the zoned property, appeal from a permanent injunction against further excavations without the special use permit required therefor under the zoning ordinance. We find that the zoning ordinance in question valid; that the evidence supported the finding that the ordinance has been violated by prior excavations and removals from the zoned property; and that the city is not barred by estoppel or laches from enforcement of such ordinance. Consequently, we affirm.

At trial the city offered testimony showing that the property had been validly zoned in 1965 for a use described in the zoning ordinance as "Agricultural District." Permitted uses of property zoned as agricultural district include "farming, ranching and gardening activities." The city's proof also showed that in an agricultural district (as well as many other zoned districts) the excavation of sand and gravel requires that a special use permit be obtained therefor from the city. Further, the city's proof reflected that the Marriotts acquired the property in 1977, and thereafter commenced to excavate and sell sand and gravel from the property without the required special use permit. The Marriotts offered proof that their excavations were for the purpose of constructing a commercial catfish farm which use was consistent with the zoning asserted by the city. Following a non-jury trial, the city was granted the permanent injunction it sought. Upon the request of the Marriotts, the court made and filed the following findings:

1. Defendants J. R. Marriott and B. O. Marriott (hereinafter "Defendants") are the owners of 30.1102 acres of land located on Block 8511, Middlefield Road, and located generally at 2800 Middlefield Road.

2. The Defendants have conducted and allowed to be conducted a stone, sand or gravel extraction use on the subject property. B & J Excavating, Inc. conducted the stone, sand or gravel extraction use for the Defendants and was subject to the Defendants' control.

3. The portion of the subject property upon which the stone, sand or gravel extraction use has been conducted is zoned as an agricultural district as defined by the Comprehensive General Zoning Ordinance of the City of Dallas, Texas.

4. The agricultural district zoning on the subject property was properly established on March 29, 1965. Public hearings and notice as required by State law were given throughout the City to establish permanent zoning district classification for all property within the City of Dallas.

5. The City Council of the City of Dallas has not approved a Specific Use Permit to conduct the stone, sand or gravel extraction use on the subject property.

6. Defendants are causing irreparable harm to the subject property by injuring and disfiguring the subject property by the mining of stone, sand or gravel, and adversely affecting the value of adjoining property.

7. The notation "Temp A" that appears on the official Zoning District Map as a zoning district classification for a portion of the subject tract was a drafting error by the staff of the Department of Urban Planning.

8. The reply on the City of Dallas Action Center Report dated September 12, 1978 only indicates that no violation of the zoning ordinance was observed on August 29, 1978.

9. Defendants purchased the subject property on July 1, 1977. The stone, sand or gravel excavation use began after the purchase of the property.

10. That the Defendants, J. R. Marriott and B. O. Marriott, have removed from the premises sand and gravel since 1978.

11. That prior to the passage of the Comprehensive Zoning Ordinance by the City of Dallas on March 29, 1965, the property in question had been zoned temporary single-family residential from the time it had been annexed by Plaintiff in 1962.

On appeal, the Marriotts urge reversal by attacking the validity of the zoning ordi-

nance, by attacking the application of the zoning ordinance to the particular activity of the Marriotts, and by claiming that the city is barred, by the doctrines of estoppel and laches, from enforcing the zoning ordinance against the Marriotts.

The validity of the city's zoning ordinance, both as originally passed and as subsequently amended, is presumed after sufficient proof is made for such ordinance to be admitted into evidence. *Nichols v. City of Dallas,* 347 S.W.2d 326, 331 (Tex.Civ. App.—Dallas 1961, writ ref'd n.r.e.). To overcome this presumption, the Marriotts first attack the agricultural district zoning of their property as not being permanent zoning but only a temporary zoning, which, having lasted 16 years as "temporary," was a denial of due process to the owners. *See Appolo Development Inc. v. City of Garland,* 476 S.W.2d 365 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). We cannot agree. The ordinance in question was correctly construed by the trial court to provide a permanent zoning classification for property within the city in 1965, including the Marriotts' property, as well as to provide that *newly annexed* property would also bear the same classification temporarily until its more appropriate zoning could be determined. Since all newly annexed property must necessarily bear some temporary zoning classification, the selection by the city of "agricultural district" for that purpose does not invalidate the permanent zoning of the same name applied to property long within the city, and whose best use has been determined on a permanent basis. We hold that, under the evidence, the Marriotts property was not "temporarily zoned" and its owners have not been deprived of due process by the retention of any temporary zoning for an unreasonable time.

Additionally, the Marriotts urge that the application of the zoning ordinance in this instance was arbitrary and capricious and, thus, a confiscation of their property, or its use, without due process of law. In particular, the Marriotts point out that since the city's witnesses conceded that catfish farming was within the use permitted by the zoning ordinance and that excavating the ponds was for such use, it was arbitrary and capricious for the city to say that sale and removal of the material from the pond's excavations violated the zoning ordinance. We cannot agree. There was additional testimony that large gravel-hauling-type trucks commenced transporting gravel from the Marriotts property every morning between 5 and 6 o'clock and that 50 to 75 truck loads were being hauled out each 5 day week. One witness estimated that 50 to a 100 thousand cubic yards of gravel had been removed and sold. While Marriott testified that this extensive gravel operation was in pursuit of his ultimate intention to farm catfish on the property, the trial court was entitled to conclude on the evidence that use of the property was in contravention of the zoning ordinance. The trial court's conclusion supports the determination made by the city's enforcement staff to the same effect and negates Marriotts contention that the city's application of the zoning ordinance to the Marriotts property was arbitrary and capricious. We hold that the use to which the Marriotts were putting their property, whether preparing catfish ponds, or excavating and selling gravel, was a fact question upon which the evidence was in dispute and that the resolutions of this fact question against the Marriotts was supported by the evidence.

Lastly, the Marriotts urge that the city is barred from enforcing the zoning ordinance against them by estoppel and laches. The estoppel argument is based upon a report of a city inspector dated August 12, 1978, following a complaint by a neighbor of Marriotts about the gravel hauling. The inspector's report referred to Marriotts' pending application for a certificate of occupancy as a catfish farm and that no violation was observed by him on his personal inspection. Marriott argues that the city is bound by and estopped to deny the inspector's conclusion of no violation; moreover, the city failed to appeal the inspectors finding to the city's Board of Adjustment and is barred by laches from any challenge at this late date in the

**564**

present injunction suit. We cannot agree. The equitable doctrines of estoppel and laches are not available against the city, even if the facts might otherwise support their application, because the city is discharging a governmental function in enforcing its zoning ordinance. *See Amarillo v. Stapf,* 101 S.W.2d 229, 129 Tex. 81 (Tex. Comm. of App.1937); *City of Dallas v. Gaechter,* 524 S.W.2d 400 (Tex.Civ.App.—Dallas 1975, writ dism'd). The Marriotts rely on *City of Dallas v. Rosenthal,* 239 S.W.2d 636 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r. e.), in which this court held that, after the city had issued a building permit for the erection of a meat packing plant and the plant actually constructed, the city was estopped from contending that the plant violated the city's zoning ordinance. *Rosenthal* does hold that, "[I]n exceptional cases ..., a municipality, even in the exercise of a governmental function, may be subjected to the same rules of equitable estoppel as are individuals where right and justice require it." *Rosenthal, supra,* at 645. However, under the facts shown, *Rosenthal* more squarely bottoms its ruling upon the premise that the city, seeking equity, must show it had done equity. *Rosenthal* concludes that:

> ... the jury having found that municipal inaction has caused appellee to so change his condition as that great damage would be inflicted upon him by grant of the mandatory writ. On the other hand, these jury answers in sum are tantamount to findings of superior equities in favor of defendant, thereby entitling him and not the plaintiffs to a measure of restraint.

*Id.* at 646–647. Here, under the findings of the court which are supported by the evidence, the Marriotts had excavated and sold gravel in great quantities while representing to the city that they were only constructing catfish ponds. Marriotts' representations, now found false, work no estoppel or laches against the city because it is the Marriotts with "unclean hands." As in *Rosenthal,* we hold that the superior equities under these facts are with the city and not with the Marriotts.

Affirmed.