CITY OF DALLAS, Appellant,

v.

GTE SOUTHWEST, INC., Appellee.

GTE SOUTHWEST, INC., Appellant,

v.

CITY OF DALLAS, Appellee.

No. 2–97–379–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 5, 1998.
Rehearing Overruled Dec. 10, 1998.

E. Russell Nunnally, Tammy S. Wood, Bell, Nunnally & Martin PLLC, Dallas, for Appellant.

Ronald D. Stutes, Office of the City Attorney, Dallas, for Appellee.

Before LIVINGSTON, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

GTE Southwest Incorporated (GTESW) sued the City of Dallas and other cities for a declaratory judgment to resolve disagreements about the amounts of franchise fees payable by GTESW under provisions of the defendant cities' ordinances that allowed GTESW to conduct portions of its telephone transmission business within the cities' rights-of-way. When the conflicts arose, GTESW stopped paying franchise fees to the cities. Because all of the cities except Dallas eventually settled with GTESW, only GTESW and the City of Dallas are parties to this appeal.

Following a jury's determination that the 1982 Dallas ordinance requires GTESW to

pay the City of Dallas a franchise fee of $280,615 for the period from September 1, 1995 through the verdict's date, the trial court's final judgment ordered GTESW to pay the city that amount but ordered that the city take nothing on its counterclaim for a portion of the company's long distance telephone revenues. Earlier, the trial court had ruled that it lacked subject matter jurisdiction to determine whether, by refusing to continue paying franchise fees to Dallas, GTESW had become a mere trespasser in the city's rights-of-way.

Because the City of Dallas and GTESW each appeal from the trial court's rulings, each party is an appellant and an appellee. *See* Tex.R.App. P. 3.1(a), 38. We affirm in part and reverse and render in part.

## Background

The now disputed relationship with Dallas began in 1982 when that city and a corporation named GTE agreed on the terms of a franchise that would give GTE the privilege of placing and operating telephone transmission lines and equipment in city rights-of-way in exchange for a franchise fee payable by GTE to the city. To implement the franchise in 1982, the city enacted an ordinance stating the terms of the agreement, and GTE began operating under it. GTESW is GTE's corporate successor.

The 1982 ordinance requires the telephone company to pay Dallas a franchise fee equal to "four percent (4%) of the gross revenues derived during the second preceding month (from or in connection with the rendition of telecommunication service within the City of Dallas pursuant to this ordinance). . . ." That clause establishes the payment base for the fee.

Although it was a local telephone service company when it began operating under the 1982 Dallas ordinance, GTE was a part of the American Telephone & Telegraph Company (AT & T) network that enabled GTE telephone users to make long distance telephone calls. During that time, AT & T paid GTE for the portion of GTE's facilities that were used each time a GTE customer made a long distance telephone call on a GTE line through the AT & T network. In 1983, a federal court judgment ordered AT & T to divest itself of such arrangements with local serving companies, which included GTE. *See U.S. v. American Telephone & Telegraph Co.*, 552 F.Supp. 131 (D.D.C.1982) *aff'd sub nom, Maryland v. U.S.*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Before the divestiture, Federal Communications Commission (FCC) regulations required the local serving company, GTE, to label as "long distance revenue" the money it received from AT & T for being part of AT & T's long distance calling network. After the divesture, GTE customers had to pay GTE a *network access fee* to be able to make long distance calls on the GTE lines, and the FCC required GTE to identify that income separately in an account known as *end user common line revenues* (EUCL).

## The Disputed Payment Base

Section 12 of the 1982 ordinance specifies that the payment base is "gross revenues" that include but are not necessarily limited to "subscribers' station revenues, public telephone revenues, local private line services, other local service revenues, directory advertising and sales, and other local operating revenues." GTESW contends that revenues from the long distance network access fees and the EUCL charges, which GTESW receives from its telephone users, are not included in the agreed payment base defined by the ordinance. Conversely, the City of Dallas argues that the ordinance term "gross revenues" does include the network access fees and the EUCL that GTE telephone customers must pay GTE for providing them long distance telephone service.

## Trial Court

The city's appeal focuses on two pre-trial rulings. The first upheld GTESW's assertion that the Legislature has vested in this state's Public Utilities Commission (PUC) the exclusive jurisdiction over the business and property of all telecommunications utilities in Texas, *see* Tex. Util.Code Ann. § 52.002(a) (Vernon 1997) (recodifying the same statutory language that existed when Dallas enacted the 1982 ordinance: *see* the former Public Utility Regulatory Act, codi-

fied as TEX.REV.CIV. STAT. ANN. art. 1446c (1976)), and therefore, the trial court has no jurisdiction to determine whether GTESW's continuing occupancy of city rights-of-way without paying the agreed upon franchise fees makes GTESW a trespasser.

■ The issue of subject matter jurisdiction may be raised at any time, even for the first time on appeal, and when apparent from the record may be raised by the court if not raised by the parties. *See Texas Assn. of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 n. 10 (Tex.1993). Here, on grounds that the PUC's jurisdiction to resolve such matters is exclusive, the court dismissed the city's counterclaim of trespass that included a request for a mandatory injunction prohibiting GTESW from continuing to occupy city rights-of-way.

The second pre-trial ruling the city challenges excluded from evidence some of the testimony of the city's witness, David Cook, who the city intended to use at trial as the city's sponsor of a GTESW document that had been prepared by GTESW as part of settlement negotiations between the parties and which the city had obtained at a deposition taken the week before trial. The city argued to the trial court that the multi-page exhibit (actually several exhibits attached collectively as exhibit D to the city's appellate brief) was a summary of data recorded in a lengthier GTESW computer printout, and therefore, the exhibit was admissible as a summary of voluminous material. *See* TEX.R. EVID. 1006.[1] The city's trial attorney represented to the court that Mr. Cook had examined a GTE business record before trial to confirm that the excluded exhibit accurately summarized the record and included evidence of GTE's long distance revenues.

The court had entered a pretrial order prohibiting the city from presenting any expert testimony at trial because the city had not met court-ordered deadlines for expert designation and expert reports. The city complains that at trial the court refused to allow Mr. Cook's proposed testimony about the GTESW exhibit, deciding that it was expert testimony and the city had not designated expert witnesses. On appeal, the city says it wanted Mr. Cook to testify about the alleged summary only as a fact witness, not an expert.

At the trial, the jury heard evidence that for several years before the suit was filed, the city accepted without protest GTESW's franchise payments knowing that those payments were based only on the company's revenues from its local telephone service and knowing the company contended that the ordinance's payment base did not include revenues from long distance telephone service. Among the defenses GTESW asserted at trial was the theory that because the city fully understood the company's interpretation of the ordinance's payment base and did not dispute the company's payment practice until this lawsuit was filed, and because the city continually accepted GTESW franchise fees that were calculated only on its local telephone service, the city waived any right to claim a percentage of the telephone company's revenues from long distance access and EUCL charges.

When the evidence closed, GTESW moved for (1) a directed verdict that GTESW is entitled to a declaratory judgment that long distance access fees and EUCL revenues are not part of the payment base defined in the 1982 city ordinance, and (2) a directed verdict that the city take nothing on its counterclaim that GTESW breached its contract with the city by refusing to pay the city a percentage of the revenues from long distance access fees and the EUCL revenue. The trial court granted GTESW a directed verdict that the city take nothing on that specific breach of contract counterclaim, but refused to grant GTESW a declaratory judgment excluding the long distance access and EUCL revenues from the ordinance's payment base.

### Jury Verdict

Twelve of the fifteen jury questions begin with the words "do you find." The twelve questions awkwardly presented jurors a double-negative (*e.g., answer "yes" or "no": do you find that ... are not gross revenues*), and because GTESW asserts that the trial

---

1. Known at time of trial as TEX.R. CIV. EVID. 1006.

court should have disregarded most of the jury's answers, we will note each answer and paraphrase its effect:

1. The jury answered "no" (*i.e.,* the jury did *not* find that the ordinance's franchise fee payment base *excluded* long distance access revenues collected by GTESW from its customers).

2. The jury answered "no" (*i.e.,* the jury did *not* find that the ordinance's franchise fee payment base *excluded* EUCL charges collected by GTESW from its customers).

3. The jury answered "yes" (*i.e.,* the jury *found* that by November 15, 1985, the city knew or should have known by exercising reasonable diligence that GTESW was not paying the city a percentage of the company's gross receipts from the access and EUCL charges).

4. The jury answered "yes" (*i.e.,* the jury *found* that by August 31, 1989, the city knew or should have known by exercising reasonable diligence that GTESW was not paying the city a percentage of the company's gross receipts from access and EUCL charges).

5. The jury answered "no" (*i.e.,* the jury did *not* find that since November 15, 1985, the city knowingly accepted payment of franchise fees from GTESW with knowledge that the payments did *not* include a percentage of the company's access and EUCL revenues).

6. The jury answered "yes" (*i.e.,* the jury *found* that since August 30, 1989, the city knowingly accepted payment of franchise fees from GTESW with knowledge that the payments did *not* include a percentage of the company's access and EUCL revenues).

7. The jury answered "no" (*i.e.,* the jury did *not* find that the city unreasonably delayed seeking payment of franchise fees from GTESW that would include a percentage of the company's access and EUCL revenues).

8. The jury answered "no" (*i.e.,* the jury did *not* find that the city waived any claim to collect a percentage of the company's access and EUCL revenues).

9. The jury answered "no" (*i.e.,* the jury did *not* find that the city accepted the franchise fees paid by GTESW as full satisfaction

of the performance that the ordinance required of the company).

10. The jury answered "no" (*i.e.,* the jury did *not* find that the city and the company agreed on the payment base prescribed in the 1982 ordinance as a result of a mutual mistake made by the two parties).

11. The jury answered "no" to a single question that contained six separate inquiries (*i.e.,* the jury did *not* find that the city represented to the company that the payment base included telephone service revenues only from local calls; and the jury did *not* find that the city failed to inform the company that the payment base included all company revenues, including long distance access and EUCL charges; and the jury did *not* find that the city intended to make such representations and concealments in order to induce the company to accept and operate under the ordinance; moreover, the jury did *not* find that the company's interpretation of the ordinance was a mistake; and the jury did *not* find that the company understood that its franchise fee payment base excluded access or EUCL charges; and the jury did *not* find that the company would not have entered the agreement had it known the city would seek a percentage of the company's access or EUCL revenues).

12. The jury answered "no" (*i.e.,* the jury did *not* find that *there was no meeting of the minds* between the company and the city about the franchise fee payment base at the time their agreement was signed).

13. The jury *found* that the company's reasonable and necessary attorney fees in this case are $125,000 for pretrial preparation and trial; $10,000 for an appeal to the Court of Appeals; $2,500 for making or responding to an application for writ of error to the Supreme Court of Texas; and $2,500 for writ of error if granted by the Supreme Court.

14. The jury answered "no" (*i.e.,* the jury did *not* find that the company's failure to comply with the agreement was excused).

15. The jury *found* that the sum of $280,-615 would fairly and reasonably compensate the city for the company's failure to pay the city a franchise fee of 4% of the company's

gross revenues for the period from September 1, 1995, through the verdict's date (September 9, 1997).

## Post Trial Motions

The trial court denied GTESW's motions for judgment non obstante verdicto (n.o.v.) and to disregard several jury answers to questions in the court's charge. GTESW argues, and we agree, that "there was no jury finding that GTESW was liable to Dallas on its claims for breach of contract for nonpayment of long distance access and EUCL charges." GTESW insists that judgment should be entered in its favor on the jury's answers to questions 1, 2 and 8, and that the judgment should include an award of its attorney fees in accord with the jury's answer to question 13.

We will address the city's appeal first.

## The City's Issues

The city presents only two issues:

(1) was the excluded testimony of Mr. Cook, the city's witness, admissible under Evidence Rule 1006 as a summary of a voluminous business record belonging to GTESW?

(2) did the trial court err by finding that it was without subject matter jurisdiction to determine the city's counterclaims for trespass and mandatory injunction against GTESW?

We conclude that the answer to the city's first issue is no and that the second issue is moot.

## Exclusion of Mr. Cook

We will begin with the trial court's partial exclusion of the city's witness David Cook and the GTESW document that he wanted to sponsor as an exhibit for the city under Evidence Rule 1006. At the time of trial, Mr. Cook was Assistant Director of the Dallas City Controller's Office, Revenues and Taxation Division. He was not involved in the negotiation or creation of the 1982 franchise agreement between the city and GTESW. The trial court did allow Mr. Cook to testify that the city's "position" was that long distance access and EUCL revenues were included in the payment base, but the court excluded his proposed testimony about the contents of the GTESW documents he wanted to sponsor for admission into evidence.

Because the jury questions were not artfully worded, the jurors had to plod through double-negatives. The city asserts that the jury's answers to questions 1 and 2 of the court's charge establish that GTESW's revenues from network access fees and EUCL are *included* within the 1982 ordinance definition of "gross revenues," the base upon which the city and the telephone company must calculate the franchise fee payable by the company to the city. GTESW disputes the city's interpretation of those two answers. GTESW argues that rather than the jury finding that the ordinance definition of "gross revenues" *includes* network access fees and EUCL, the jury's answers to questions 1 and 2 are nothing more than the jurors' plain statement that they *did not find* that the definition *excludes* those items. And, GTESW maintains that in light of the evidence the jury heard, the city's interpretation of the answers to questions 1 and 2 is wrong.

We note that section 12 of the ordinance provides that the franchise fee will amount to a percentage of GTESW's gross revenues from its "rendition of telecommunication service within the City of Dallas," a phrase that the city insists does not restrict the origin of those revenues to a particular source such as only local or only long distance calling. Significantly, section 12 lists several examples of GTESW local service revenues that are within the meaning of the term "gross revenues," but also provides that "gross revenues" are *not limited* to the listed examples. However, if we were to accept the city's interpretation of the jury's answers to questions 1 and 2, we would have to conclude that because the jury did *not* find that section 12's payment base *excludes* network access fees and EUCL, then the base automatically *includes* them. That conclusion would be inconsistent with the evidence the jury heard.

The evidence establishes that the 1982 franchise agreement was negotiated for the

city by its director of public utilities, Thomas James. Ward W. Wueste, GTESW's general counsel, negotiated the agreement for the company. The testimony by Mr. James and Mr. Wueste, fact witnesses, makes plain that neither the city nor the company intended for long distance revenues to be included in the franchise fee payment base when the 1982 agreement was made. When that agreement was created, the city already had a similar one with Southwestern Bell Telephone (in evidence as plaintiff's exhibit 15). Mr. James testified that the agreement with Bell excluded long distance revenues from its franchise fee payment base, and that when the city entered the 1982 agreement with GTESW, the city intended the 1982 agreement to be consistent with the Bell agreement.

The record reveals that the trial's only expert testimony about the meaning of section 12's phrase "telecommunication service within the City of Dallas" was provided by Mr. Jack Lightle, a GTESW expert witness. His uncontroverted testimony established that the phrase "service within the city" is telecommunications industry terminology for local service only and does not include long distance network access or EUCL. Because the jury heard that uncontroverted expert testimony about the technical meaning of the disputed phrase in section 12; and because the fact-witness testimony by Mr. James and Mr. Wueste made it plain that the intention of the parties' agreement was to exclude long distance revenues from the payment base; and because the jury answered question 10 by finding that the parties did not make a mutual mistake when they made the section 12 agreement; and because the jury answered question 3 by finding that as early in the agreement's term as November 15, 1985, the city knew or reasonably should have known that the franchise fee payments by GTESW did not include any portion of the company's long distance revenues; and because the jury answered question 6 by finding that "since August 30, 1989 Dallas has knowingly accepted fees from GTESW under the Agreement with knowledge that such payments did not include a percentage of access and EUCL charges," we must

conclude that there is no evidence to support the city's argument that the jury's answers to questions 1 and 2 are findings that network access fees and EUCL are *included* in the payment base contained in section 12.

The city suggests that although the jury's findings as a whole established the city's counterclaim for GTESW's breach of contract, the trial court directed a verdict that the city take nothing on that claim because the court's earlier refusal to allow Mr. Cook to testify about the contents of the excluded exhibit had left the jury with no admissible probative evidence of the city's monetary damages that were caused by the breach. In an effort to illustrate that it was harmed by the trial court's exclusion of Mr. Cook's testimony and exhibit, the city argues that without the excluded evidence, the city was unable to prove its actual money damages because it was the only evidence that could have shown the jury the amounts of network access and EUCL revenues that GTESW was withholding from the computation of the franchise fees it paid the city. We are not persuaded.

It is undisputed that after this suit began, GTESW stopped paying to the city the franchise fees that the company had based only on revenues from its service. It is also undisputed that, pending the suit's final disposition, the company placed in escrow $253,615 (shown by defendant's exhibit 30) to cover those fees from the period of October 1995 through June 1997. Mr. Melvin Willis, an area manager for GTESW testified that the company meant for the $253,615 to remain in escrow until this lawsuit determined whether the company should pay the money to the city. Mr. Cook later testified that the escrowed $253,615 covered all but four of the months for which GTESW had not paid a fee to the city. The city contends, and we agree, that from facts admitted in evidence the jury was entitled to infer that GTESW had withheld from the city an additional $17,000 of franchise fees. Adding that $17,000 to the $253,615 in escrow makes a total of $280,615 which is the jury's answer to question 15: "[w]hat sum of mon-

ey, if any, if paid now in cash, would fairly and reasonably compensate Dallas for its damages, if any, that resulted from GTESW's failure to pay Dallas 4% of GTESW's gross revenues under the agreement?" The court's instruction with question 15 allowed the jury to consider but a single element of damages: "[t]he amount withheld by GTESW from September 1, 1995 through the present, *not including any amounts for access and EUCL charges*." (Emphasis added). The jury's answer to question 15 is supported by probative evidence.

Because the admission and exclusion of evidence is within a trial court's sound discretion, the proper standard of appellate review requires us to determine whether the trial court abused its discretion by acting without regard for any guiding rules or principles in excluding Mr. Cook's testimony and the exhibit and whether the abuse, if any, probably resulted in an improper judgment that turned on the very evidence that was excluded. *See* TEX.R.APP. P. 44.1(a)(1); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995).

■ We are not persuaded by the city's argument that the excluded exhibit did not contain expert opinions and did not require the supporting testimony of an expert's explanation. The exhibit was not simply a summary of GTESW's voluminous business records that the trial court should have admitted routinely under Evidence Rule 1006 as an exception to the hearsay rule:

> The contents of voluminous writings, recordings, or photographs, otherwise admissible, which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

TEX.R. EVID. 1006.

Many of the pages of the proffered exhibit appear to be summaries of other documents that were not before the court, which would leave the court and jury with a need to hear expert opinion testimony as to whether the payments referenced on the pages were properly calculated or not.

When proffering Mr. Cook as the city's witness-sponsor of the GTESW data within the exhibit, the city's attorney told the trial court that the exhibit was a transfer of data from a *non-understandable* GTESW version into an *understandable* GTESW version. However, Mr. Cook, the city's employee, neither prepared nor supervised the preparation of the GTESW document, nor did he vouch for the accuracy of its contents. He was not presented to the court as one having personal knowledge about the exhibit's preparation and content. A person proffered as a fact witness may not testify, absent personal knowledge of the matter to be testified about. *See* TEX.R. EVID. 602.[2] Nor did the city present Mr. Cook to the trial court as a person qualified to testify about network access and EUCL charges or their inclusion in the franchise fee payment base. When considering whether the exhibit was admissible, the trial court concluded that the documents required expertise for their compilation, would require supporting expert testimony for the trial, and that Mr. Cook was being proffered as such an expert despite the pretrial order denying the city the privilege of presenting expert testimony at trial. We agree with the trial court's conclusion.

The city urges that the ruling at trial excluding Mr. Cook's testimony and the exhibit made the court's pretrial order denying the city the use of experts at trial a "death penalty" for the city's counterclaim for long distance revenues. However, the city has not directly appealed that pretrial order, nor did the city seek a continuance, or try to get the evidence before the jury by other means such as calling GTESW employees as witnesses for the purpose of questioning them about the data contained in the GTESW document. Moreover, when the court excluded the first series of Cook exhibits the city proffered, the city agreed that ruling would apply to the other exhibits the city intended to offer through Mr. Cook. The city waited until after the close of evidence to

---

**2.** Known at time of trial as TEX.R. CIV. EVID. 602.

offer Mr. Cook's remaining testimony and exhibit through a bill of exception.

Our review of the excluded multi-page exhibit does not reveal that it relates to network access fees, and the jury's finding that the city is entitled to $280,615 in damages from GTESW for the company's failure to pay the city 4% of its gross revenues as provided in the agreement, compels us to conclude that the judgment in this case did not turn on the excluded evidence and, therefore, was not improper. The trial court did not act without regard for any guiding rules and principles of law in excluding the proposed testimony of Mr. Cook and his exhibit, and the trial court's exclusion of that evidence was not an abuse of discretion. We overrule the city's first issue.

### The City's Trespass Claim

The city's second issue asks us to determine whether the trial court erred by ruling that it lacks the subject matter jurisdiction to determine the city's claim that by failing to pay franchise fees, GTESW became a trespasser in city rights-of-way. In its claim against GTESW for trespass, the city did not ask for money damages, but sought the company's ouster from the rights-of-way. GTESW argues that during this appeal, the issue has become moot, and we agree.

■ On January 28, 1998, after the trial court entered judgment in this suit and after expiration of the time for post-judgment motions, the City of Dallas enacted ordinance 23416. That ordinance recites the result of the trial, acknowledges that this appeal is pending, and authorizes GTESW's use of the city's rights-of-way to provide telecommunications service in Dallas. Because the enactment of the ordinance renders the city's second issue moot, we dismiss that issue.

### GTESW's Issues

GTESW's appeal includes three issues:

(1) whether GTESW is entitled to a declaratory judgment that the payment base prescribed in the 1982 city ordinance excludes GTESW's revenues from long distance network access fees and EUCL.

(2) whether the city has waived any right to claim a percentage of GTESW's revenues from long distance network access fees and EUCL.

(3) whether the trial court should have granted GTESW's motions for directed verdict, for judgment non obstante verdicto (n.o.v.), and to disregard jury findings.

We conclude that the answer to the first and second issues is yes. As we consider the third issue, we will discuss the reasons why one of GTESW's motions for directed verdict (against the city's quantum meruit counterclaim) should have been denied and why the other motions should have been granted.

### Declaratory Judgment for GTESW

We have already reviewed the provisions of section 12 of the 1982 ordinance, and upon the evidence, have determined that those provisions exclude long distance network access and EUCL revenues from the payment base upon which GTESW's franchise fees are computed. As a matter of law, GTESW is entitled to a declaratory judgment construing section 12 of the 1982 city ordinance as meaning that GTESW's revenues from long distance network access fees and EUCL are excluded from the payment base on which to calculate GTESW's 4% franchise fee to the City of Dallas. We sustain GTESW's first issue.

### Waiver

■ GTESW's second issue raises the question of whether the city has waived its claim to a percentage of the company's revenues from network access fees and EUCL. A party may waive and relinquish a known right by intentionally engaging in conduct inconsistent with that right, and the inconsistent conduct may be evidenced by proof of the party's knowing silence or inaction. *See Tenneco, Inc. v. Enterprise Products, Co.,* 925 S.W.2d 640, 643 (Tex.1996). In its trial pleading (fifth amended petition and original answer to the city's counterclaim), GTESW asserted waiver as an affirmative defense to the city's counterclaim for breach of contract. *See* TEX.R. CIV. P. 94. A party who asserts an affirmative defense assumes the burden of pleading that defense and producing evidence

to support it. *See, e.g., Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980). After hearing the evidence in this case, the jury answered question 7 "no." By that answer, the jury did *not* find "that the city unreasonably delayed in seeking payment from GTESW of a percentage of GTESW's gross receipts received from access and EUCL charges." And by its answer to question 8, the jury did *not* find (question 8) that the city waived any claim to collect that percentage.

 On appeal, GTESW challenges the evidence by contending that *as a matter of law,* the evidence heard by the jury established that the city waived any right to collect as part of the franchise fees a percentage of the company's long distance access and EUCL revenues. Because GTESW had the burden of proof on the issue of waiver, its complaint on appeal is a challenge to the legal sufficiency of the evidence to support the jury's answers to questions 7 and 8. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Gooch v. American Sling Co., Inc.,* 902 S.W.2d 181, 183–84 (Tex.App.—Fort Worth 1995, no writ). As an appellant attacking the legal sufficiency of adverse answers to findings on which it had the burden of proof, GTESW must, as a matter of law, overcome two hurdles. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, the record must be examined for evidence that supports the findings, while ignoring all evidence to the contrary. Second, if there is no evidence to support the fact finder's answers, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *See id.; Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). GTESW preserved its second issue for our review by the timely filing of motions to disregard the jury's answers and for judgment n.o.v.

A letter written in August 1989, sent by GTESW and received by the city, states that the company's long distance access and EUCL revenues are not included in the payment base provided in section 12 of the 1982 ordinance and that the company would not pay the city a percentage of those revenues in the franchise payments. The letter also invited, should the city's representatives desire, further discussion of the company's exclusion of those revenues from the payments. Nevertheless, the city continued to accept the payments without any percentage of long distance revenues, and we find no evidence that the city ever questioned that omission before this suit was filed in 1995. Further, the jury answered question 6 by finding that after August 1989 the city continued to accept the franchise fees from GTESW knowing that the fees were not based on any long distance revenues.

 We have examined the entire record for evidence to support the jury's finding in answer to question 8, that the city has not waived its claim to collect a franchise fee that includes a percentage of GTESW's long distance revenues. However, after applying the applicable standard of review, we conclude that the record establishes the contrary proposition (waiver) as a matter of law. The jury's answer to question 3 finds that as early as November 15, 1985, the city knew or reasonably should have known that GTESW was not paying the city a percentage of its access and EUCL revenues. The evidence also establishes, and the jury found, that the city was silent and took no action from August 1989 until 1995, when the city counterclaimed against GTESW in this suit to enforce a claim for the company's exclusion of long distance revenues from the calculation and payment of franchise fees and a general claim seeking damages for GTESW's non-payment of fees. The evidence establishes that by its course of conduct the city waived its claim of entitlement to a percentage of GTESW's revenues from network access fees and EUCL. *See Tenneco,* 925 S.W.2d at 643. We sustain GTESW's second issue.

### Rulings on GTESW Trial Motions

The third issue of GTESW's appeal focuses on the trial court's denial of the company's motions for directed verdict, judgment n.o.v., and to disregard jury findings.

First, GTESW moved for a directed verdict that long distance access fees and EUCL revenues are not part of the franchise fee payment base defined in the 1982 ordinance's

payment base. The trial court denied that motion for directed verdict, but should have granted it. GTESW is entitled to a declaratory judgment on that ground, for the reasons we have already discussed.

Next, GTESW moved that the trial court direct a verdict that the city take nothing on its counterclaim that the company's refusal to pay the city a percentage of the long distance revenues was a breach of the company's contract with the city. Appropriately, the trial court granted that motion and directed a verdict that the city take nothing on that counterclaim.

However, the city did not limit its counterclaim against GTESW to the breach of contract theory that it was owed a percentage of the long distance revenues. The city's first amended counterclaim, on which it went to trial, alternatively asserted a quantum meruit claim that the city was entitled to recover from GTESW the reasonable value of using the city's rights-of-way during the time the company withheld payment. The jury answered question 15 by assessing those damages at $280,615. For reasons we have already stated, the evidence clearly supports that answer, and the trial court did not err by overruling GTESW's motion for directed verdict that was grounded on the premise that the jury heard no evidence of the city's damages.

■ After the verdict, GTESW filed a motion for judgment n.o.v. and to disregard jury findings. A trial court may render judgment n.o.v. if a directed verdict would have been proper; also, a trial court may, upon motion and notice, disregard any jury finding on a question that has no support in the evidence. *See* TEX.R. CIV. P. 301. A motion for judgment n.o.v. should be granted when the evidence is conclusive and one party is entitled to judgment as a matter of law. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990).

The grounds asserted by GTESW in its motion for judgment n.o.v. are that (1) the evidence conclusively established that the company's network access and EUCL revenues were not included in the payment base in the 1982 ordinance, and (2) the evidence conclusively established that the city waived any claim to collect a percentage of the company's revenues derived from access and EUCL revenues. GTESW's motion also asked the trial court to disregard the jury's answers to questions 1 and 2 (respectively: the jury answered "no," that it did *not* find that the ordinance's payment base *excluded* long distance access revenues and EUCL charges) and question 8 (the jury answered that it did *not* find that the city waived its claim to collect a percentage of those long distance revenues). Upon the evidence and for the reasons we have already discussed, the trial court should have disregarded the jury's answers to questions 1, 2 and 8, because GTESW was entitled as a matter of law to judgment n.o.v. on the two grounds asserted in its motion.

## Conclusions

We have overruled one issue on which the city bases its appeal, and we have dismissed its other issue as moot. First, the evidence that the city proposed to offer through Mr. David Cook was not admissible under Evidence Rule 1006 as a summary of otherwise admissible material. The pretrial ruling denying the city the use of expert testimony at trial was not a "death penalty" for the city's counterclaim for a share of the long distance revenues, and the city's proffer of Mr. Cook as a sponsor of the exhibit prepared by GTESW placed him in the role of a potential expert, not a fact witness, to explain the meaning and significance of the exhibit's contents. The trial court did not err by excluding that evidence.

Second, the city's issue of whether the trial court had jurisdiction to determine whether GTESW's status had changed from franchisee to trespasser in the city's rights-of-way became moot when, after trial, the city enacted the 1998 ordinance authorizing GTESW to operate its telecommunications service in the city's rights-of-way.

■ After considering GTESW's appeal, we have sustained its first issue, finding as a matter of law that GTESW is entitled to a declaratory judgment construing section 12 of the 1982 ordinance as meaning that GTESW's revenues from long distance net-

work fees and EUCL are excluded from the payment base on which to calculate GTESW's 4% franchise fee payable to the City of Dallas. Accordingly, the trial court should have granted GTESW's motion for directed verdict premised upon that ground. A directed verdict is proper under limited circumstances, one of which is that the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent. *See Boswell v. Farm & Home Sav. Ass'n,* 894 S.W.2d 761, 768 (Tex. App.—Fort Worth 1994, writ denied); *see also* Tex.R. Civ. P. 268.

In its action for declaratory judgment, GTESW pled and proved its reasonable and necessary attorney fees, as found in the jury's answer to question 13. Having shown itself entitled to that judgment, GTESW is entitled to recover those fees as a prevailing party. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1994).

We have sustained GTESW's second issue, finding that by the city's course of conduct and as a matter of law the city waived its right to claim that the franchise fee payment base includes GTESW's revenues from long distance network access fees and EUCL. The trial court did not err by granting a directed verdict that the city take nothing on its breach of contract counterclaim for a percentage of the company's long distance network access and EUCL revenues.

Accordingly, we affirm the trial court's judgment in part and reverse it in part. Because a remand of this case is not necessary for further proceedings or in the interest of justice, we will render the judgment that the trial court should have rendered on the portion of the judgment we reverse. *See* Tex.R.App. P. 43.3.

We affirm the trial court's judgment that the City of Dallas take nothing on its counterclaim against GTESW that sought to recover a percentage of GTESW's network access charge revenues and EUCL charge revenues.

We affirm the trial court's judgment that on its general counterclaim, the City of Dallas have and recover from GTESW the sum of $298,432.01 with interest on that sum from November 10, 1997, until paid.

We reverse the trial court's denial of GTESW's motions for directed verdict on its claim for declaratory judgment, for judgment n.o.v., and to disregard the jury's answers to questions 1, 2 and 8. Having construed section 12 of City of Dallas ordinance no. 17450 (revised June 15, 1982), we render a declaratory judgment that section 12 excludes GTESW's long distance network access revenues and its end user common line revenues from the payment base upon which the city and the company are required to calculate the 4% franchise fee payable by GTESW to the City of Dallas. Because of the jury's answer to question 13 establishing the company's reasonable and necessary attorney fees, we render judgment that GTESW shall have and recover those fees from the City of Dallas in these amounts: $125,000 for pretrial preparation and trial; $10,000 for an appeal to the Court of Appeals; $2,500 for making or responding to an application for writ of error to the Supreme Court of Texas; and $2,500 if application for writ of error is granted by the Supreme Court of Texas.

We find that there is good cause to apportion the costs of this appeal equally between GTESW and the City of Dallas. In the interest of justice, each party to this appeal shall pay one-half of the costs. *See* Tex. R.App. P. 43.4.