Kathleen K. BAIRD, Appellant

v.

CITY OF MELISSA, Texas, Appellee.

No. 05–04–01018–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 2005.

William D. Cramer and John R. Roach, Jr., Roach, LLP, Plano, TX, for Appellant.

Richard M. Abernathy, Rebecca H. Brewer and Charles J. Crawford, Abernathy, Roeder, Boyd & Joplin, P.C., Larry R. Boyd, Boyd & Veigel P.C., McKinney, TX, for Appellee.

Before Justices WRIGHT, BRIDGES, and RICHTER.

## OPINION

Opinion by Justice BRIDGES.

Kathleen Baird appeals the summary judgment in favor of the city of Melissa terminating Baird's nonconforming use of her property as a recreational vehicle (RV) park and ordering the RVs removed. Baird asserts that summary judgment was in error because (1) the pertinent ordinance does not prohibit use as an RV park, and (2) the affirmative defenses raised are legally cognizable and she raises fact questions on each of those defenses. We affirm the trial court's judgment.

## Facts

The property (the "Property") in question is located within the City of Melissa (the "City"). It has been used as an RV park since 1984, when John Turbeville, Jr. was granted a permit from the Melissa City Council. Turbeville requested permission to have travel trailers parked on the Property on a temporary basis for seasonal workers. The City granted Turbeville a permit for three trailers for six months, followed by an evaluation. It appears this evaluation never took place.

In 1981, the City adopted a Comprehensive Zoning Ordinance, which zoned the Property as Commercial–1 ("C–1"). The use of property in a C–1 district as an RV park was not expressly forbidden or allowed. In 1992, the City revised the zoning ordinance. The new ordinance describes a C–1 district as a "Restricted Commercial District" and lists a "Schedule of Uses and Parking Requirements," which lists various uses and the corresponding zoning districts in which they might operate or be constructed. An "RV park" is not listed in any zoning district. The section governing nonconforming uses and structures states that "no nonconforming use or structure may be expanded or increased beyond the lot or tract upon which such nonconforming use is located as of the effective date of this ordinance."

In 1986, the City passed an ordinance governing water use. The water ordinance prohibited more than one "residence, dwelling, or building" from receiving water from only one meter. That ordinance was clarified later, to make clear that it includes recreational vehicles located in an RV park. In 1989, the City adopted an ordinance governing sewer uses.

In March 1990, the City sent Turbeville a letter giving him ten days to come into compliance with the water and sewer ordinances. In August 1990, Turbeville addressed the City Council, which permitted his using only one sewer connection and one water meter for the Property, which had five RVs on it at the time.

In February 1996, Baird and her then-husband purchased the Property from Turbeville. There is evidence suggesting there were six RVs on the Property at that time. Baird stated in her affidavit that she made various improvements to the Property, including renovating the retail building into a laundry facility and office for the RV park, laying out new pads for RV sites, installing cable connections, and upgrading water and sewer connections. Today there are spaces for twenty hook-ups, and at the time of her deposition in this suit, Baird acknowledged there were eighteen RVs on the Property. Baird also stated there are "eight to nine" water meters on the Property.

In November 2001, the City sent Baird a letter demanding that the Property be brought into compliance with all current ordinances and terminating any protected status as a nonconforming use. The City demanded the RVs be removed within thirty days. Baird did not comply. In May 2002, the City filed its petition and application for temporary injunction in this

suit, asking for declaratory judgment and the removal of all RVs from the Property.

In the summer of 2003, the Planning and Zoning Committee ("P & Z") entertained a proposal to amend the zoning ordinance, to provide penalties for violations of that ordinance and provide an "amortizing" mechanism to extinguish nonconforming uses (the "Amortizing Ordinance"). On July 17, 2003, the City held a public hearing on the proposed ordinance, after which the P & Z decided not to recommend to the City Council that it be adopted. In July 22, 2003, the City Council considered the proposed ordinance at a public hearing during their regularly scheduled meeting; given the P & Z's decision not to recommend adoption, the City Council declined to pass it. The council reviewed appointments to the City's boards and commissions. All but one member of the P & Z were removed and new members were voted in.[1] On August 28, 2003, the new members of the Commission voted to recommend to the City Council to accept the proposed ordinance governing nonconforming uses. In September 2003, the City Council passed the Amortizing Ordinance.

In October 2003, the City gave notice of a special meeting and hearing to set a compliance date, pursuant to the newly passed ordinance, to terminate Baird's nonconforming use. At the hearing, Baird and her attorney made a presentation to the City Council. Council member Newsome states in her affidavit that the decision to terminate Baird's nonconforming use was made pursuant to a "pre-prepared" motion and that no discussion occurred on "public necessity" or any of the factors listed in the ordinance for setting an amortization period. The City Council

gave Baird about two and one-half weeks, until November 15, 2003, to remove all RVs from the Property. This date was later extended by agreement to December 5, 2003.

The trial court granted summary judgment in favor of the City. In its final judgment, the court declared that the nonconforming use of the property as an RV park was terminated and ordered that all RVs be removed instanter. The trial court suspended enforcement pending this appeal.

## I. Unpermitted Use

■ In her first issue, Baird argues that the City failed to establish that her use of the Property for an RV park was an unpermitted use under the city's zoning ordinance. She argues that the pertinent ordinance, the Comprehensive Zoning ordinance adopted in 1992, listed some 250+ permitted uses, showing in a grid whether such use was "permitted," "prohibited," or "permitted with specific approval" by the City. She points out that the category "RV park" is not listed at all in the ordinance. Thus, she argues, an RV park is not prohibited; it is merely not listed. In addition, the City has a provision for approving non-listed uses, and there is no evidence the City ever considered whether "RV park" should be a listed category. Therefore, she argues, use as an RV park was not prohibited; and, the trial court erred in terminating the Property's use as an RV park.

■ We apply the same rules to construe municipal ordinances as those applied to construe statutes. *Bd. of Adjustment of the City of San Antonio v. Wende,*

---

1. In her affidavit, City Council member Teri Newsome states that a business partner of Melissa's mayor was "placed" on the commission. These partners, she asserts, have land interests in the City within a mile of the RV park. "Aside from a voluntary shift in positions, no other members of City Boards or Commissions were replaced that night."

92 S.W.3d 424, 430 (Tex.2002). Our goal is to discern the legislative body's intent; we look first to the plain meaning of the text. *Id.* To give effect to the legislative enactment as a whole, we do not assign a meaning to a provision that would be inconsistent with other provisions of the enactment. *Id.* (citing *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex. 2001)). Because statutory construction is a question of law, we review the issue de novo. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003).

The plain language of the text of the ordinance prohibits uses that are not specified as "permitted" under the schedule:

> Land and buildings in each of the following classified districts may be used for any of the following listed uses but *no land shall hereinafter be used ... for other than those uses specified* for the district in which it is located as set forth by the following schedule of uses.

It is undisputed that the schedule does not list "RV park" as a permitted use in a district zoned as C–1, or in any district. But the ordinance plainly states that no land shall be used for uses other than those specified for the district in which the land is located. That a procedure exists to classify uses not listed does not change the prohibition of yet-unlisted uses. We conclude that Baird's use of the Property as an RV park is not a permitted use under the 1991 Comprehensive Zoning Ordinance. Accordingly, we resolve Baird's first issue in favor of the City.

## II. Equitable Affirmative Defenses

■ Baird asserts the equitable affirmative defenses of waiver, laches, bad faith, and estoppel to challenge the City's enforcement actions to terminate her use of the Property as an RV park. The City presented as summary-judgment grounds for termination its enforcement actions under both the Comprehensive Zoning Ordinance and under the Amortization Ordinance. We examine the City's enforcement of the Amortization Ordinance.[2]

The record shows that after passing the Amortization Ordinance in August 2003, the City gave notice of a special meeting to hear a request to set a compliance date for Baird under the Amortization Ordinance. On October 21, Baird and her attorney spoke collectively for about 30 minutes and after that, the council passed a motion setting the compliance date as November 15, 2003.

## Standard of Review

■ The trial court did not specify whether it granted summary judgment for the City on its no-evidence or traditional summary-judgment motion. We review the judgment under the traditional standard. The standard governing traditional summary judgment is well established. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* To decide whether a disputed material fact issue exists, we take as true the evidence favorable to the non-movant. *Id.* We indulge every reasonable inference, and resolve any doubts, in favor of the non-movant. *Id.*

## The Amortization Ordinance

The Amortization Ordinance permits the City to order a non-conforming use terminated upon finding a "public necessity for expedited compliance" with the zoning reg-

---

**2.** Resolving that summary judgment in favor of the City is proper based on the Amortization Ordinance, we need not reach Baird's issue concerning the Comprehensive Zoning Ordinance.

ulations, based on an examination of the character of the surrounding neighborhood, the degree of incompatibility of the use, and the effect of its use or cessation of use.[3] The ordinance also provides a number of factors that must be considered in determining a reasonable amortization period, including the owner's capital investment and return on that investment and costs resulting from discontinuing the use.[4]

The City argues that its enforcement of its zoning ordinance is a governmental function and thus, as a matter of law, not subject to Appellant's equitable defenses. Appellant asserts that this is the type of case in which such defenses are cognizable and that she raises fact questions on each of her affirmative defenses. She asserts the City waived its right to enforce its ordinances, as it had acquiesced in the use of the Property as an RV park since 1984, first giving her notice of a violation in November 2001. She asserts the defense of laches, urging that she relied on the City's permission to Turbeville in 1990 for one water and sewer connection, coupled with the City's years-long delay in enforcement, such that she made improvements to the Property.

Baird also asserts the defense of bad faith and unclean hands, stating that the City "attempted to circumvent the judicial process through application of a dubious non-conforming-use ordinance." She challenges the process by which the City enacted the Amortization Ordinance: after the P & Z recommended it not be adopted, the membership of the P & Z was largely replaced, and thereafter the ordinance was adopted. Baird asserts that the mayor, a new member of the Planning & Zoning board, and the municipal judge had an economic motive to terminate her RV park, as they owned or financed property in the vicinity. She asserts the value of that property would be enhanced if Baird were forced to cease the RV park operation.

Baird further asserts bad faith in the City's application of the Amortization Ordinance to her case, in that the City failed to make any findings on the "factors" listed for consideration of a compliance date. The affidavit of a council member states that the decision to terminate Baird's nonconforming use was made pursuant to a "pre-prepared" motion and that no discussion occurred on "public necessity" or any of the factors to set the amortization period.

## Legal Principles

Municipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions are within the scope of municipal police power. *City of University Park v. Benners,* 485 S.W.2d 773, 778 (Tex.1972) (referring to

---

3. The ordinance provides as follows:

   30.8 *Amortization of Nonconforming Uses.* A. *Determination of Need for Expedited Compliance.* Any person who resides or owns real property in Melissa may request that the City Council establish a compliance date for a nonconforming use. Upon receiving such a request, the City Council shall determine whether there is a public necessity for expedited compliance with the zoning regulations. The following factors must be considered by the city council in determining the public necessity for expedited compliance:

   1. The character of the surrounding neighborhood.
   2. The degree of incompatibility of the use to the zoning district in which it is located.
   3. The effect of the nonconforming use on the surrounding area and the effect of its cessation on that area.

4. That section also provides, "If the owner did not have an investment in the use before it became a nonconforming use, the owner is not entitled to an amortization to recover any of the costs referenced in the factors."

reasonable use of what is termed the "amortization" technique). The courts' review of a duly enacted ordinance is circumscribed and the party attacking the ordinance has an "extraordinary burden" of showing that "no conclusive or even controversial or issuable fact or condition existed" which would authorize the municipality's passage of the ordinance. *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 792–93 (Tex.1982) (zoning is recognized tool of community planning, allowing municipality, in exercise of its legislative discretion, to restrict use of private property). If the evidence raises an issuable fact whether the zoning regulation has a substantial relationship to the protection of the public's health, safety or welfare, then the restriction must stand as valid. *Id.*

■ Affirmative defenses based in equity have been consistently held not to apply when the activity complained of is a governmental function. *Truong v. City of Houston,* 99 S.W.3d 204, 211 (Tex.App.-Houston [1st Dist.] 2002, no pet.). The equitable doctrines of estoppel and laches are not available against a city when it is enforcing zoning ordinances, even if the facts might otherwise support their application, because the city is discharging a governmental function. *Marriott v. City of Dallas,* 635 S.W.2d 561, 564 (Tex.App.-Dallas 1982), *aff'd,* 644 S.W.2d 469 (Tex. 1983).

■ "The general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel." *Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970). The *Hutchins* court noted an exception, stating "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Id.* at 836. But estoppel should be applied "with caution and only in exceptional cases

where the circumstances clearly demand its application to prevent manifest injustice." *Id.* We will look at the totality of the circumstances. *Truong,* 99 S.W.3d at 212. A party with "unclean hands" will not be permitted to pursue equitable relief. *Id.*

The supreme court applied the exception in *Roberts v. Haltom City,* 543 S.W.2d 75 (Tex.1976). City officials had told an injured party that the city was not responsible for the conditions that caused her injuries, directing her to a third party. When the plaintiff discovered that the city was indeed liable, a thirty-day notice requirement had lapsed. *Id.* at 76–77. The court held that the city could be estopped by the conduct of its officials in that circumstance. *Id.* at 80.

This Court has found circumstances "exceptional" and held a city estopped from enjoining a property owner's use of his property in violation of a zoning ordinance. *City of Dallas v. Rosenthal,* 239 S.W.2d 636 (Tex.Civ.App.-Dallas 1951, writ ref'd n.r.e.). The landowner had obtained a building permit and discussed the renovation work with the city inspector. The renovating continued for eighteen months. The court affirmed the trial chancellor's refusal to enjoin the landowner's use of the property: the deviations were well within the purview of the initial discussions with the inspector—who was authorized to issue the permit—and the city had remained silent until practical completion of all the work was done. *Id.* at 645.

Others courts have applied equity principles to municipalities as follows: *Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 639 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (laches defense available; for 30 years cities stood by and took franchise fees); *City of Dallas v. GTE Southwest, Inc.,* 980 S.W.2d 928, 937 (Tex.App.-Fort Worth 1998, pet. de-

nied) (waiver defense available; over 6 years city took franchise fees without objection); *City of Corpus Christi v. Nueces County Water Control and Imp. Dist. No. 3,* 540 S.W.2d 357, 378 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.) (laches available; city stood by 40 years before asserting abandonment, while district diverted water and became dependent on water source).

## Analysis and Conclusion

Concerning the City's enactment of the Amortization Ordinance, we conclude that Baird fails to meet the "extraordinary burden" of showing that "no conclusive or even controversial or issuable fact" was raised on the question whether the zoning regulation has a substantial relationship to the protection of the public's health, safety or welfare. *See Comeau,* 633 S.W.2d at 792–93 (if issuable fact concerning substantial relationship to general health or welfare, then restriction must stand as valid).

Concerning the City's enforcement of the Amortizing Ordinance, the circumstances Baird complains of do not rise to the level of an exceptional case warranting court intervention. Unlike the facts in *Roberts,* Baird does not assert that city officials affirmatively misled her so as to jeopardize a right she already possessed. Similarly, this is not like the *Rosenthal* case, where the city gave the landowner permission to renovate, through an inspector who was authorized to issue that permit and the deviations were within the purview of the discussions with the inspector. *Rosenthal,* 239 S.W.2d at 645. Neither are Baird's factual allegations similar to the cases involving franchise fees or water usage. *Houston Lighting & Power,* 101 S.W.3d at 639; *City of Dallas v. GTE Southwest, Inc.,* 980 S.W.2d at 937; *Corpus Christi,* 540 S.W.2d at 378.

Rather, Baird asserts she relied on the City's early approval for Turbeville to use only one water and sewer connection, coupled with the City's non-enforcement over time. But the affirmative permission given Turbeville was for five RVs, which Baird increased to eighteen RVs over five years, with no affirmative permission by the City for this enlarged, unpermitted use. The facts in this case are more comparable to those in *Truong,* 99 S.W.3d 204, where the court affirmed the trial court's summary judgment against appellants on their equitable defenses. When the City of Houston attempted to enforce deed restrictions prohibiting commercial activity, the plaintiffs asserted equitable defenses, citing the long-term use of the property for commercial activity, including the issuance of permits to build a commercial structure. *Id.* at 212–13. In affirming summary judgment for the city, the court found it significant that the city's enforcement was within five years of the appellant's purchase of the property. Similarly, the enforcement against Baird was within five years of her purchasing the property, during which time she increased the unpermitted use.

Accordingly, we conclude that the instant case does not fall within the purview of those "exceptional cases" that warrant the court's imposing rules of equity to prevent "manifest injustice." *Hutchins,* 450 S.W.2d at 836. We resolve Baird's third issue in favor of the City.

We **AFFIRM** the trial court's summary judgment in favor of the City.