Opinion issued March 12, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00823-CV

———————————

## VILLAGE OF TIKI ISLAND, Appellant

## V.

## JERRY D. RONQUILLE AND WIFE JANELLE L. RONQUILLE, MILTON CHANG AND WIFE, MARIE, ANGELIA G. HILL AND RICHARD SAMANIEGO, Appellee

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 14-CV-0752

## O P I N I O N

This is an accelerated appeal from the trial court's temporarily enjoining enforcement of Tiki Island's ordinance prohibiting short-term rentals of residences against plaintiff homeowners. We lack jurisdiction to address the injunction

against four plaintiffs, and we affirm the injunction in favor of the remaining plaintiff.

## BACKGROUND

Plaintiffs/appellees Jerry Ronquille, Janelle Ronquille, Milton Chang, Marie Chang, Angelia Hill, and Richard Samaniego own properties in the Village of Tiki Island, Texas.[1] Plaintiffs sued defendant/appellant Village of Tiki Island, alleging that a new prohibition on short-term rentals of their Tiki Island houses amounts to a regulatory taking.

### A. Plaintiffs' Petition

Plaintiffs' petition alleges that "short term rentals have occurred on Tiki Island for over 20 years," and that, "prior to passage of Ordinance 05-14-02, Plaintiffs were able to do short term lease/rentals." Plaintiffs further allege that an important consideration for each of them in buying their houses was the ability to rent their houses short-term, that Plaintiffs "have operated their short-term leasing/rental without interference by the Village of Tiki Island until the passage of Ordinance No. 05-14-02," and that their properties are already contractually obligated for short-term rentals in the future. Plaintiffs seek a declaratory

---

[1] Tiki Island is a waterfront community in Galveston County consisting of about 960 homes, with approximately 40% full-time occupants, and 60% part-time occupants.

2

judgment, as well as a temporary injunction, a permanent injunction, damages, attorneys' fees, and costs.

In support of their request for temporary injunction, Plaintiffs allege they have been "damaged by the unlawful taking of their properties" and that, unless a temporary injunction is granted prohibiting enforcement of the ordinance, Plaintiffs will suffer immediate and irreparable harm in loss of short-term rental income and potential breach-of-contract liability to individuals with whom they have contracted with for future rentals.

Finally, Plaintiffs assert that, by grandfathering fifteen other properties from the prohibition on short-term rentals, the Village's Board of Aldermen recognize that short-term leasing and rental does not cause public harm to Tiki Island.

## B.    The Village's Plea to the Jurisdiction and Answer

In response to Plaintiffs' petition, the Village filed an Answer and Plea to the Jurisdiction. The Village asserted that the trial court "lacks subject matter jurisdiction over portions of the Plaintiffs' Petition." Specifically, it contends that it is entitled to governmental immunity because (1) Plaintiffs have failed to allege facts showing a waiver of the Village's immunity, (2) Plaintiffs have not pleaded facts showing a regulatory taking, and (3) the "meaning and validity of a penal statute or ordinance should be determined by a court exercising criminal jurisdiction."

## C.    The Temporary Injunction Proceedings

On August 1, 2014, the trial court held a hearing on Plaintiffs' motion for temporary injunction, during which evidence was presented about the Ronquilles', the Changs', and Richard Samaniego's claims.

*Plaintiff Jerry Ronquille*

Ronquille testified that he purchased his Tiki Island house in July 2011 for $370,000. His property is located in Tiki Yacht Club Colony, a section that does not belong to the Tiki Island Civic Association. This matters because the Tiki Island Civic Association did regulate short-term rentals in areas covered by the association when he bought his property. His family planned to use the property, and rent it out on a short-term basis when he and his family were not there. In 2011, the Ronquilles earned about $20,000 in short-term rentals and, in 2012 and 2013, they earned about $30,000 each year. In 2014, through the date of the August 1, 2014 temporary-injunction hearing, they had earned about $20,000. He testified that he already has contracts for short-term rentals into early 2015.

Ronquille listed his house for sale in late Spring of 2014 for $450,000, before he found about abut the short-term rental problem. He has had some buyers express interest, but no one will make a formal offer or negotiate for a price until after the trial court's decision. Ronquille testified to his belief that the inability to rent his Tiki Island house reduces its value by approximately $20,000 to $40,000.

4

Ronquille further testified he has paid hotel occupancy taxes quarterly to both the State and to the Village of Tiki Island on his rental income. His check to the Village for the prior quarter had not been cashed by the Village as of the date of the temporary-injunction hearing.

Roquille testified that, if the trial court did not enjoin the Village's ordinance prohibiting short-term rentals, he would (1) be burdened economically by the loss of rental income to offset his mortgage, (2) be deprived of the investment that he made when he bought the property, (3) be vulnerable to lawsuits by those he is already obligated to rent to, and (4) suffer significant decrease in resale value.

*Plaintiff Milton Chang*

Chang testified that he bought his Tiki Island house in July 2012 for $280,000 and spent $30,000 on improvements. Like Ronquille's house, Chang's house is in Tiki Yacht Club Colony and is not covered by the Tiki Island Civic Association. Before he purchased the house, Chang inquired and received assurances that short-term rentals were permitted. In 2013, he received $18,221.00 in short-term rental revenue and, as of the August 1, 2014 hearing, had received about $14,000 for 2014. As of that date, he also had future rental commitments through November 2014. Chang opined that an inability to rent short-term would make his house more difficult to sell and reduce its value.

Chang received a letter, dated June 27, 2014, from the Village's building inspector ordering Chang to cease all short-term rentals, and stated that charges would be filed against him if he continued to violate the ordinance. Chang also received a letter, dated July 18, 2014, returning his checks dated July 14, 2014 for the prior year's and current year's hotel tax. Chang testified that he had been trying to pay the 2013 taxes since January of 2014, but had problems getting information from the Village about how to pay them.

*Scott Maxwell*

Maxwell[2] testified that he owns a Tiki Island house he built 2011. That house is in Tiki Yacht Club Basin and outside the coverage of the Tiki Island Civic Club. He selected that area to build because short-term rentals were allowed there. He lives there full-time, and is self-employed part-time running a fishing guide business out of his house. He did one short-term rental in March 2014, when he rented his house out for $2,750 for the week.

Maxwell does not currently engage in short-term rentals as part of his business, but he allows out-of-town fishing customers to stay at his house short-term without charge. He would like to be able to charge customers staying at his house more than customers that do not. Maxwell opined that his property would be more valuable if short-term rentals were allowed.

---

[2] Maxwell is not a party to this case.

*Plaintiff Richard Samaniego*

Samaniego testified that he bought his Tiki Island house in 2007 for $390,000. It is in a section of Tiki Island that is regulated by the Tiki Island Civic Association. Samaniego lives in League City and works outside of the United States the majority of the time. When he purchased the house, he was not aware of any restrictions on short-term rentals. He believes he could sell his house now for $375,000. If short-term rentals were available, he opined that he could sell it for $390,000 or $395,000.

Samaniego did not know about a lawsuit between homeowners and Tiki Island Civic Association. He did not see a notice in the newspaper about that lawsuit, nor did he know he would have been given the opportunity to grandfather his property in for short-term rentals as a result of a settlement in that case.

In 2009, he listed his house for short-term rental and received a cease-and-desist letter from Tiki Island Civic Association. Samaniego would very much like to engage in short-term rentals to help pay the mortgage and expenses on his house. He has done some long-term rentals, but opined that he has lost significant potential income by not being able to do shorter terms.

*Vicki Baggs*

Baggs is a real-estate agent specializing in waterfront property with about half of her business concentrated in Tiki Island. She has been a realtor for 22

years, and has been involved in listing and managing properties for short-term rentals in the past three or four years. The Ronquilles and Changs have been her clients since 2011.

She requires short-term rental tenants pay a $300 cash deposit and leave a credit card number on file. She inspects each house before and after each rental. In four years, there have been three incidents that required her to keep part or all of a short-term renters' cash deposit. She estimated that 95% of short-term renters are families on vacation that take good care of the houses. Baggs drives past each rented house on Saturday nights because if a renter is going to throw a party, that is the night it would most likely happen. Once she had to evict a short-term renter from Ronquille's house and once she had to evict a short-term renter from Chang's house. Both incidents involved neighbors' complaints about parties.

Baggs testified that the rental market has been excellent recently and that she has booked commitments for Ronquille's house every remaining month in 2014 and one for 2015. She opined that Tiki Island houses that can be used for short-term rentals are easier to sell and sell for more money. She testified that there have been short-term rentals on Tiki Island since Tiki Island was founded.

Baggs further testified that Ordinance 05-14-02 has damaged many of her clients, as many people cannot afford their vacation home without the ability

engage in short-term rentals. The value of her client's rental commitments for the rest of 2014 is significant, and many future leases have already been signed.

Baggs is handling the sale of Ronquille's house. She opined that they would already have an offer on his house if Ordinance 05-14-02 had not passed.

Baggs agreed that only a small percentage of Tiki Island owners rent their houses for short terms, but she testified that many more would if it were not prohibited. She also testified that many people do short-term rentals "under the radar" in the area of Tiki Island that is covered by the ban the Tiki Island Civic Association put in place in 2006.

*Mayor Vernon Teltschick*

Teltschick testified that he was appointed Mayor by the Village's Board of Alderman in June 2014 when the incumbent mayor died. He testified that Ordinance 05-14-02 was passed by the Village Board of Alderman on May 20, 2014 to prohibit short-term rentals. An exception under the ordinance was made for houses that had been used for short-term rentals before March 1, 2011 and were current in payment of taxes to the State and the Village. Houses meeting that criteria were identified in an appendix to the ordinance and grandfathered for as long as title to the houses stayed in the same direct family name. Teltschick testified that he did not know why Ordinance 05-14-02 grandfathered only houses used for short-term rentals before March 1, 2011 and why those houses beginning

9

short-term rentals between March 1, 2011 and May 20, 2014 were not likewise grandfathered. He did explain the reason that particular houses were grandfathered though; the grandfathered properties were all covered by Tiki Island Civic Association, and a court order resulting from earlier litigation between the Tiki Island Civic Association and certain homeowners expressly permitted use of those houses for short-term rentals.

Teltschick testified that the Village has ordinances regulating noise. He knows of 15 or 20 calls complaining of noise in the previous five years, and he testified that there are probably more calls about renters than residents. He is not aware of any public health issues, safety issues, moral issues, or welfare issues with short-term or long-term rentals. The only issue he is aware of with short-term rentals is noise disturbances and people parking in other people's lots. He also testified that having short-term rentals can devalue neighboring residences.

The majority of the people in the community with whom Teltschick has discussed this subject are opposed to short-term rentals. He testified that the reason for distinguishing between short-term rentals and long-term rentals is that the shorter-term renters caused a lot more disturbances in the neighborhoods. While there are avenues for the community to deal with problems caused by short-term rentals (such as the noise ordinance), those are not effective. Telschick opined that Ordinance 05-14-02 is necessary to address this problem.

*Building Inspector Darrell Hunter*

Hunter testified that he has worked for the Village for nine years. Since passage of the 2014 ordinance, he has sent out six cease-and-desist letters, prepared by the City Attorney, to plaintiffs Milton Chang and Angelia Hill and others. His instructions to send the letters came from the Mayor through the City Secretary. Hunter has personally heard complaints from neighbors of some of the people he sent letters to about noise from tenants at these houses.

## D.    The trial court's rulings

At the close of the August 1, 2014 hearing, the trial court announced that it would issue a temporary injunction in favor of the Ronquilles and Changs. The court stated that it would not issue a temporary injunction in favor of Samaniego, however, because the evidence showed that he was not currently engaged in short-term rentals so an injunction was not necessary to preserve his status quo. The court also refused to issue a temporary injunction in favor of Hill because she was not at the hearing, and the court had not heard any testimony or evidence about the specifics of her situation.

### 1.    The Ronquilles and Changs

On August 26, 2014, the trial court signed an order stating,

> IT IS THEREFORE ORDERED that a Temporary Injunction issue, operative until a Final Judgment is entered in this cause, as follows:

1.    Defendant, Village of Tiki Island, Texas, its agents, servants, successors, trustees and attorneys are commanded forthwith to desist and refrain, and are hereby enjoined, from enforcement of its Ordinance No. 05-14-02 as to Plaintiffs Jerry D. Ronquille, Janell L. Ronquille, Milton Chang and Marie Chang.

2.    Plaintiffs will post with the Clerk of this Court a cash bond, in conformity with the law, in the amount of $500.00.

3.    The Clerk shall forthwith, on the filing by Plaintiffs of bond, issue a temporary injunction in conformity with the law and the terms of this Order.

IT IS FURTHER ORDERED that the trial on the merits of this cause is set for the 23th of March to the 25th of March, 2015.

## 2.    Angelia Hill

On August 18, 2014, Hill filed a motion to reconsider the trial court's oral pronouncement that it would not issue a temporary injunction in her favor. On September 30, 2014, the trial court held a hearing on Hill's request for a temporary injunction. Hill was the only testifying witness, and the trial court agreed to also consider the evidence from the August 1, 2014 hearing in considering her petition.

Hill testified that she purchased her Tiki Island house in 2007 for $300,000. The house is located in Tiki Yacht Basin, which is outside the area that the Tiki Island Civic Association has authority to regulate short-term rentals. She purchased it as an investment, with an intention of doing both long-term and short-term rentals. Before purchasing, she researched whether the property was restricted by deed restrictions or covenants. She and her realtor gathered from their research that there were no deed restrictions or homeowners' association

12

regulations burdening the property. She began renting out her house short-term shortly after her purchase.

As of the September 30, 2014 hearing, Hill had earned approximately $25,000 in rental income for 2014. She tried for the first time to pay hotel taxes to the Village in early May 2014, but was told that there would be a meeting in May or June regarding short-term rentals and that, in the meantime, the Village was not collecting taxes. She has not paid hotel taxes to the State.

After the Village passed the May 2014 ordinance prohibiting short-term rentals, Hill hired a lawyer to file suit. She counts on that rental income to pay for the home. She further testified that, if the ordinance is upheld, it will cause her financial harm. She opined that her property would lose value if she could no longer engage in short-term rentals of her house, and that the ability to do such rentals would enable her to obtain a premium price for the property if she sold it.

Hill received a cease-and-desist letter from the Village's Building Inspector explaining that it has evidence that she is engaged in short-term rentals in violation of applicable ordinances, noting the fine is $250 for a first conviction and $500 for subsequent convictions, and threatening charges would be filed against her if she continued to violate the ordinance. A citation dated 09/02/2014 was entered into evidence citing her for violating Ordinance 05-14-02 on 08/29/14 through 09/01/14 and setting her appearance date at September 18, 2014. Finally, a letter to Hill

13

from the Tiki Island Municipal Court clerk was entered into evidence ordering her to appear on September 18, 2014 and explaining that a warrant would otherwise issue for her arrest. Hill testified that her lawyer made arrangements to continue the municipal court case pending the outcome of the temporary-injunction hearing.

At the close of the hearing, the trial court stated that it would grant a temporary injunction in favor of Hill pending the trial on the merits.

That same day, September 30, 2014, the trial court signed an order stating,

> IT IS THEREFORE ORDERED that a Temporary Injunction issue, operative until a Final Judgment is entered in this cause, as follow:
>
> 1. Defendant, Village of Tiki Island, Texas, its agents, servants, successors, trustees and attorneys are commanded forthwith to desist and refrain, and are hereby enjoined, from the enforcement of its Ordinance No 05-14-02 as to Plaintiff, ANGELA G. HILL.
>
> 2. Plaintiff will post with the Clerk of this Court a cash bond, in conformity with the law, in the amount of $250.00.
>
> 3. The Clerk shall forthwith, on the filing by Plaintiffs of the bond, issue a temporary injunction in conformity with the law and terms of this ORDER.
>
> IT IS FURTHER ORDERED that the trial on the merits of this cause is set for the 23th of March to the 25th of March, 2015.

### ISSUES ON APPEAL

The Village raises the following two issues on appeal:

1. "Whether the trial court erred in enjoining the enforcement of Ordinance No. 05-14-02 because the Plaintiffs failed to allege or demonstrate the existence of a viable takings claim against the City."

14

2. "Whether the trial court erred in enjoining the enforcement of Ordinance No. 05-14-02 because the Plaintiffs failed to allege or demonstrate an irreparable injury to a vested property right."

## APPELLATE JURISDICTION

As a threshold matter, we address our own jurisdiction over the Village's appeal, and the scope of our review.

### A. Who are the Parties to this Interlocutory Appeal?

The trial court's order granting a temporary injunction in favor of the Ronquilles and Changs was signed August 26, 2014. The trial court's order granting a temporary injunction in favor of Hill was signed September 30, 2014. The August 26 order makes no mention of Hill, and the September 30, 2014 order makes no mention of the Ronquilles or Changs.

On October 8, 2014, the Village filed a notice of appeal stating,

(1) The appeal is taken from the 405th District Court of Galveston County, Texas. The cause number in the trial court is 14-CV-0752, and the style of the case in the trial court is "Jerry D. Ronquille and Wife Janelle L. Ronquille, Milton Chang and wife, Marie, Angelia G. Hill and Richard Samaniego vs. Village of Tiki Island."

(2) The order appealed from is the September 30, 2014 Order Granting Temporary Injunction.

(3) The Village of Tiki Island, defendant, desires to appeal.

(4) The appeal is taken to either the First or Fourteenth Court of Appeals.

(5) The party filing this notice is the defendant, Village of Tiki Island.

15

(6) This appeal is an accelerated appeal under Tex. Civ. Prac. & Rem. Code §§ 51.014 (a) (4) and (a) (8) and Tex. R. App. P. 28.1.

In both its October 15, 2014 docketing statement and November 10, 2014 amended docketing statement, the Village states this is an accelerated appeal of an interlocutory order signed on September 30, 2014 and identifies the appellees as Jerry Ronquille, Janelle Ronquille, Milton Chang, Marie Chang, Angelia Hill, and Richard Samaniego. In its brief here, the Village challenges the trial court's granting temporary injunctive relief in favor of the Ronquilles, the Changs, and Hill.

We conclude, however, that the temporary injunctive relief granted in Hill's favor on September 30, 2014 (and not the temporary injunctive relief granted in the Roquilles' and Changs' favor on August 26, 2014) is the only order properly before us. An accelerated appeal from an interlocutory order is perfected by filing a notice of appeal within 20 days after the order is signed. TEX. R. APP. P. 26.1(b), 28.1(b). The Village's notice of appeal was filed October 8, 2014, i.e., eight days after Hill's temporary injunction and 43 days after the Ronquilles' and Changs' temporary injunction.

The Village's notice of appeal did not state it challenged the trial court's August 26, 2014 order granting a temporary injunction in favor of the Ronquilles and Changs and, even if it had, it would have been untimely. Because the

16

September 30, 2014 temporary injunction order granting injunctive relief to Hill did not purport to grant or deny relief as to the Ronquilles or Changs, the Village's properly perfected appeal of the September 30, 2014 temporary injunction in Hill's favor does not vest this Court with jurisdiction over the August 24, 2014 order granting relief in favor of the Ronquilles and Changs.[3]  Accordingly, we dismiss the appeal of the August 26, 2014 temporary injunction in favor of the Ronquilles and Changs, TEX. R. APP. P. 42.3(a), and limit our review to the September 30, 2014 temporary injunction in favor of Hill.[4]

## B. Scope of this Interlocutory Appeal

The Village cites Texas Civil Practice and Remedies Code § 51.014(a)(4) (permitting appeal of interlocutory order that "grants or refuses a temporary injunction") and § 51.014(a)(8) (permitting appeal of interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit") as the statutory bases for its interlocutory appeal.  In its brief, the Village characterizes the trial

---

[3]    Had the Village timely appealed the August 26, 2014 temporary-injunction order, then this Court could have additionally reviewed the September 30, 2014 order. *See* TEX. R. APP. P. 29.6(a)(1) ("While an appeal from an interlocutory order is pending . . . the appellate court may review . . . a further appealable interlocutory order concerning the same subject matter.").

[4]    In response to our letter indicating that we intended to dismiss the appeal as to the Ronquilles and Changs under Rule 42.3(a) of the Texas Rules of Appellate Procedure, the Village indicated that its challenge is limited to the September 30, 2014 temporary injunction order in favor of Hill.

17

court's temporary-injunction hearings as "plea to the jurisdiction proceedings" and it cites the standards applicable to "reviewing a [ruling on] a plea to jurisdiction."

At the August 1, 2010 temporary-injunction hearing (resulting in the August 26, 2014 temporary injunction in favor of the Ronquilles and Changs), the trial court and parties referred only to the temporary-injunction standards, and the Village never mentions jurisdiction. At the September 30, 2014 temporary-injunction hearing (resulting in the September 30, 2014 temporary injunction in favor of Hill), however, the Village's counsel stated that he "move[d] that the plaintiff's case be dismissed for lack of subject matter jurisdiction." After permitting the Village's counsel to ask some questions of Hill related to the Court's jurisdiction, the court asked the Village's counsel to clarify what the questions were getting at, and ultimately explained that it would not allow the plea to the jurisdiction be heard with the motion for temporary injunction because the plaintiffs were entitled to notice:

> Court: [T]he plea to the jurisdiction, is that what this is?
>
> Counsel: Yes, your Honor.
>
> Court: The plea to the jurisdiction has not been set for a hearing.
>
> Counsel: But, your Honor, it is the obligation of this Court to enter orders prior to the City — with regard to the Village of Tiki Island — to ensure that it has subject matter jurisdiction of the — of the case in order that the order that it issues with regard to the Village are valid.

18

Court: I understand that, [counsel]. All it takes is: You setting it for a hearing or even submission, but it hasn't been set. This hearing is solely based upon the setting made with the motion filed by [plaintiffs' counsel] and — the plaintiffs.

Counsel: It's an obligation of the plaintiffs in this case to show that the request that they've made on this Court for relief is within the subject matter jurisdiction of this Court. Otherwise, the Court has no jurisdiction to enter an order with regard to the Village.

. . . .

Court: [T]his is a hearing at — called for by [plaintiffs' counsel]. He properly set it. He filed his motion. That's what we're going to address. If you want to, set your plea to jurisdiction motion for a hearing. If anything, it's going to be a temporary injunction.

Counsel: Your Honor, just to make it clear for the record: It is — it is the Village's position that if the Court does not have jurisdiction, that the effect of the temporary injunction is – and the exercise of that injunction would be appealable as a denial of the City's plea to the jurisdiction.

COURT: It's not a denial. I want to make it clear. I'm telling you: All you have to do is set it for a hearing.

Counsel: But the effect — the effect of the Court's action is going to be a denial of the City's plea to the jurisdiction because this Court doesn't have subject matter jurisdiction to grant the relief that's requested.

Court: Okay. I will say again: I'm not denying the defendant's plea to the jurisdiction because I haven't heard it. It hasn't been set for a hearing. When you set it for a hearing, I'll hear it and make a decision.

At the close of the hearing, the Village again argued that the evidence adduced at the temporary injunction hearing is insufficient to establish a taking, thus depriving the trial court of subject-matter jurisdiction.

Court: Okay, and I appreciate that, [counsel]; and as soon as you can set your plea to the jurisdiction for a hearing, I will

19

consider that. . . . but as you well know, the other side is entitled to notice. So if you're going to have a plea to the jurisdiction heard, you have to have notice, get it set for hearing, provide the notice of the hearing. Then we can hear all about the jurisdiction; and if I decide to grant the temporary injunction, it can be resolved at that point once we have that hearing . . . .

. . .

All right. Here is what I'm going to do: I'm going to grant this temporary injunction; but, Mrs. Hill, I really need to caution you that defendants have filed a plea of the jurisdiction that is to be heard. If they are entitled to a plea to the jurisdiction, that means that the injunction will be dissolved; and at that point, the ordinance would be in place. So just keep that in mind and — and just be prepared for any situation.

. . . .

Counsel:    Your Honor, for — just for purposes of handling a plea in an alternative matter, I believe that the Court already has before it all the evidence that we would need for a formal hearing on our plea for the jurisdiction.

Court:    You want to set it on the submission docket, or would you rather have a hearing? I'm happy to give you a hearing if you want a hearing.

Counsel:    I will — I will get back to your court coordinator. Let me think about what the options are, and we'll go from there.

Court:    Absolutely. Whenever you get it set for a hearing, we can get it on the docket and we can have a hearing for the plea to the jurisdiction. Okay?

Plaintiffs point out in their brief that, while the Village filed a Supplemental Plea to the Jurisdiction at the end of the September 30, 2014 temporary-injunction hearing, the Village never requested a hearing or submission of its plea to the jurisdiction in the trial court. The Village urges us to conclude that it is of no matter because "[i] any event, the trial court's first order of business was to

20

determine whether it had subject-matter jurisdiction." Accordingly, the Village asks us to interpret the granting of the temporary injunction in favor of Hill as an implicit denial of its plea to the jurisdiction and exercise interlocutory jurisdiction over that denial under Texas Civil Practice and Remedies Code § 51.014(a)(8) (permitting interlocutory appeal of order denying plea to the jurisdiction by governmental unit). It further argues that our review of the trial court's implicit denial of its challenge to the trial court's subject-matter jurisdiction is de novo and that dismissal is the appropriate remedy if we determine that Plaintiffs failed to establish the trial court's subject-matter jurisdiction.

The Village cites no authority for our reviewing an unruled-upon plea to the jurisdiction in this interlocutory appeal of a temporary injunction, and Plaintiffs cite no authority in support of their argument that such review by this Court is inappropriate. Our own research reveals that, until 2014, the courts of appeals were split on the issue of whether grounds for dismissing a suit for lack of subject-matter jurisdiction not ruled upon by the trial court could be raised for the first time on interlocutory appeal. The majority of courts refused to exercise such jurisdiction, reasoning that section 51.014's interlocutory jurisdiction should be strictly construed as a narrow exception to the general rule that only final judgments and orders are appealable. *See*, *e.g.*, *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 108 (Tex. App.—Austin 2011, no pet.). This Court was in the

minority, having adopted the view that section 51.014(a)(8) grants the appellate courts with interlocutory jurisdiction over newly-raised challenges to a trial court's subject-matter jurisdiction to issue a properly appealed interlocutory order because subject-matter jurisdiction can be raised at any time. *See Harris Cnty. Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 137 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Several problems inherent in allowing subject-matter jurisdiction to be raised for the first time on interlocutory appeal were identified by a concurring opinion in *Garcia v. Kubosh*:

> First, first-time consideration of jurisdictional challenges in an interlocutory appeal may eliminate or undermine the other party's opportunity to re-plead and the court of appeals's ability to rely on the trial court's discretion in determining the appropriateness of re-pleading. Second, it may interfere with the other party's opportunity to fully develop the evidentiary record in response to new jurisdictional contentions and the court of appeals's reliance on the trial court's role as factfinder. Third, it may also interfere with the other party's right to full discovery on issues relevant to new jurisdictional contentions and the court of appeals's ability to rely on the trial court's first-hand evaluation of the sufficiency of existing discovery. Fourth, it encourages parties to make strategic decisions about whether to intentionally bypass consideration of jurisdictional challenges at the trial stage and instead seek an initial adjudication from the appellate court. Finally, it creates the potential for parallel proceedings and contradictory results.

377 S.W.3d 89, 110–11 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (Brown, J., concurring).

The supreme court resolved this split in *Rusk State Hosp. v. Black*, adopting the minority view that subject-matter jurisdiction could be raised for the first time on interlocutory appeal. 392 S.W.3d 88, 96 (Tex. 2012). In so doing, the supreme court was mindful of the same concerns identified by the *Garcia* concurrence, i.e., that "a plaintiff may not have had fair opportunity to address jurisdictional issues by amending its pleadings or developing the record when the jurisdictional issues were not raised in the trial court." *Rusk State Hosp.*, 392 S.W.3d at 96. The supreme court thus built safeguards into the standard for courts of appeals to apply in reviewing challenges to subject-matter jurisdiction on interlocutory appeal that were not previously raised or ruled on in the trial court:

> Under such circumstances appellate courts must construe the pleadings in favor of the party asserting jurisdiction, and, if necessary, review the record for evidence supporting jurisdiction. In some instances the pleadings or record may conclusively negate the existence of jurisdiction, in which case the suit should be dismissed. But if the pleadings and record neither demonstrate jurisdiction nor conclusively negate it, then in order to obtain dismissal of the plaintiff's claim, the defendant entity has the burden to show either that the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings; or, if such opportunity was not given, that the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. If the governmental entity meets this burden, then the appellate court should dismiss the plaintiff's case . . . If, however, the governmental entity does not meet this burden, the appellate court should remand the case to the trial court for further proceedings.

*Rusk State Hosp.*, 392 S.W.3d at 96 (citations omitted).

23

In light of *Rusk State Hospital*, we first address the Village's challenge to the trial court's subject-matter jurisdiction to enter the September 30, 2014 temporary injunction in Hill's favor.[5]

## WAIVER OF SOVEREIGN IMMUNITY

In its first issue, the Village argues that "Plaintiffs fail to plead or demonstrate a regulatory taking" as necessary to waive the Village's sovereign immunity. *See Cernosek Enters., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 662 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980) (article I, section 17 constitutes waiver of governmental immunity for the taking, damaging, or destruction of property for public use)).  It is Hill's burden to establish the Village's consent to be sued through a waiver of immunity. *Id.* at 661.

### A. Regulatory Taking

A regulatory taking occurs when regulation (1) compels "the property owner to suffer a physical 'invasion' of his property," (2) "denies all economically beneficial or productive use of land," or (3) "does not substantially advance

---

[5]  *Rusk State Hospital* supports the view that subject-matter jurisdiction can be raised for the first time in an otherwise properly perfected and timely appeal of an interlocutory order because, as a threshold matter, a trial court must have subject-matter jurisdiction to enter the order that is the subject of the interlocutory appeal. Because the Village did not perfect an interlocutory appeal of the temporary injunction order entered in favor of the Ronquilles and Changs, we do not address—in this interlocutory appeal of the injunction order entered in favor of Hill—the trial court's subject-matter jurisdiction over the Ronquilles or Changs claims.

legitimate state interests." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004). " Otherwise, however, whether regulation has gone 'too far' and become too much like a physical taking for which the constitution requires compensation requires a careful analysis of how the regulation affects the balance between the public's interest and that of private landowners." *Id*. at 671–72. "While each case must therefore turn on its facts, guiding considerations can be identified," including: (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *Id*. at 672 (quoting *Connolly v. Pension Benefits Guar. Corp.*, 475 U.S. 211, 225, 106 S. Ct. 1018 (1986)).

The supreme court has cautioned that these factors "do not comprise a formulaic test." *Id*. For example, "the economic impact of a regulation may indicate a taking even if the landowner has not been deprived of all economically beneficial use of his property." *Id*. We must consider all of the surrounding circumstances, *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998), and apply "a fact-sensitive test of reasonableness." *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984).

### 1. Plaintiffs' Pleadings

The Village first contends that Plaintiffs have not adequately pleaded a regulatory taking. Specifically, it argues that "Plaintiffs fail to plead facts evidencing a total taking" and that Plaintiffs have not alleged facts showing an "unreasonable interference with right to use and enjoy their property."

Plaintiffs' petition states:

- "Short term rentals have occurred on Tiki Island for over 20 years. Prior to passage of Ordinance 05-14-02, Plaintiffs were able to do short term lease/rentals."

- "ANGELIA G. HILL purchased her property in Tiki Island on May 5, 2007 in Tiki Island Section 17 as an investment with the intent to do short-term leasing/rental. She purchased the property after performing a due diligence search on property restrictions, and after receiving assurance from officials with Tiki Island that short-term rental were not prohibited in Tiki Island, Texas. Since the purchase of said property, this Plaintiff has rented her property for week-ends or short term rentals; and, this Plaintiff has obligated her property for week-end rental for several months into the future. She will suffer imminent harm and irreparable injury and has not adequate remedy at law unless Defendant is enjoined from enforcing Ordinance No. 05-14-02."

- "On May 20, 2014, the Board of Aldermen of the Village of Tiki Island adopted Ordinance No. 05-14-02 . . . which inter alia, made short-term leasing/rental "'unlawful and strictly prohibited." However, the said Ordinance provided that fifteen (15) certain, identified properties (owners) in Tiki Island were "grand-fathered"' from the Ordinance and approved for short-term rentals within the jurisdiction of the Village of Tiki Island, Texas. Plaintiffs believe these "grand-fathered" properties were exempted from the Ordinance because the owners of said fifteen (15) properties filed a lawsuit against the Tiki Island Civic Association and, an Agreed Judgment was entered that allowed short-term leasing/rental by said properties' owners. Plaintiffs . . . were not, and are not, parties in the lawsuit filed against the Tiki Island Civic Association nor the Agreed Judgment entered therein."

26

- "Plaintiffs would show the Court that they have been damaged by the unlawful taking of their properties by the Defendant's passage of Ordinance No. 05-114-12. Unless a Temporary Injunction is granted prohibiting Defendant from enforcing said Ordinance, Plaintiffs will suffer immediate and irreparable harm in loss of short-term rental/lease income. Further, Plaintiffs are subject to breach of contract suits by the individuals with whom they contracted to provide short-term leasing/rentals and are obligated by contract to perform. Unless Defendant is enjoined from enforcing said Ordinance, Plaintiffs have no adequate remedy at law. Also, this Ordinance provides for monetary penalties against Plaintiffs who violate said Ordinance."

- "Plaintiffs were lawfully doing short-term rental/leasing until the passage of the said Ordinance. In "grand-fathering," fifteen (15) properties within Tiki Island, Texas, Plaintiffs believe that the Board of Aldermen recognize that short-term leasing/rental does not cause public harm to Tiki Island."

- "These Plaintiffs have conducted short-term leasing/rental for a substantial period of time. Their ability to do short-term leasing/ rental was a major part of their decision to purchase property in Tiki Island, Texas."

- "Plaintiffs believe their ability to do short-term rental enhances the value of their properties; and, the Ordinance prohibiting short-term leasing/rental decreases the value of their properties. Unless Defendant is enjoined, Plaintiffs will suffer irreparable injury that cannot be adequately compensated or measured by a certain pecuniary standard. Plaintiffs have a cause of action based on Texas Constitution Art. 1 Sec. 17, to prevent the inverse condemnation of their property through wrongful taking of property by Defendant. Plaintiffs seek a Temporary Injunction to prevent Defendant from enforcing Ordinance No. 05-14-12, pending final trial of this suit at which time Plaintiffs pray that the Temporary Injunction be made permanent to protect Plaintiffs' property rights. If the Temporary Injunction is denied, Plaintiffs will suffer irreparable harm. Plaintiffs seek to maintain the status quo (pre-Ordinance passage by Defendant) pending trial on the merits."

Hill argues that the petition adequately alleges that a taking occurred through regulatory action that inexcusably interfered with Plaintiffs' right to use and enjoy

their property.  Properly "constru[ing] the pleadings in favor of the party asserting jurisdiction," *Rusk State Hosp.*, 392 S.W.3d at 96, we agree.

In support of its argument that Plaintiffs' failed to adequately plead a takings claim, the Village cites *Mayhew*, 964 S.W.2d at 927 and *Cernosek Enterprises,* 338 S.W.3d at 662.

*Mayhew* did not address the adequacy of pleadings.  Rather, on appeal from a trial on the merits, it considered whether the defendant municipality effectuated a regulatory takings by refusing to approve plaintiffs' proposed development plans to build approximately 3,600 homes on plaintiffs' land—at a density of over three units per acre—in an area that had been zoned for more than a decade with a one-acre minimum lot requirement.  *Mayhew*, 964 S.W.2d at 925–26.  The supreme court held that the evidence demonstrated that the denial of the plaintiffs' development application "substantially advance[d] the Town's legitimate concern for protecting the community from the ill effects of urbanization" and that the evidence did not support the plaintiffs' argument that the denial "unreasonably interfere[d] with [plaintiffs'] rights to use and enjoy their property."  *Id*. at 935–38. In so doing, the court emphasized that the plaintiffs "had no reasonable investment-backed expectation to build 3,600 units on their property."  *Id*. at 937.

In contrast, Hill pleaded that  (1) she researched the permissible uses of her house before committing to buy it, ascertaining that short-term rentals were

28

permissible, (2) she relied upon Village officials assurances that short-term rentals were permitted, (3) the ability to rent short term was a major part of her decision to purchase her house, (4) she engaged in short-term rentals before Ordinance No. 05-14-02 was passed, (5) she is contractually obligated for future short-term rentals, (6) the ability to rent short-term enhances the value of her property, and (7) the prohibition on short-term rental decreases the value of her property. In other words, unlike in *Mayhew*, Hill challenges the Village's interference with her prior and current existing use of her property, not just proposed future uses.

*Cernosek Enterprises*, the other case relied upon by the Village, was an interlocutory appeal from the grant of a plea to the jurisdiction in favor of the defendant city on governmental immunity grounds. 338 S.W.3d at 660. The plaintiff, a lumber company, claimed the city's actions in granting a neighbor a drilling permit amounted to a taking for which the city did not retain immunity. *Id*. at 661. This Court affirmed, holding that the plaintiffs' pleadings were insufficient to allege a taking:

> Hill Lumber's appellate briefing does not cite to any specific allegations in the record stating why it cannot use its property or stating how the City has unreasonably interfered with its right to use and enjoy the property by issuing a drilling permit. Instead, Hill Lumber's live pleading merely alleges its "property value has been seriously diminished, [its] property and lives (as well as the lives of employees and customers) are at serious risk, [it] has lost business, and [its] general welfare and ability to enjoy a peaceable community [has] been seriously harmed." These allegations do not state specific facts evincing a taking by the City.

29

*Cernosek Enters., Inc.*, 338 S.W.3d at 662.

In contrast, Hill's pleadings do allege specifically how the use of her property is circumscribed by the City's actions, i.e., she cannot rent short-term rentals, as well as the harm, i.e., loss of current and future rental income and loss of property value. Hill has sufficiency alleged that Ordinance 05-14-02 unreasonably interfered with her right to use and enjoy her property.

## 2. The Evidence

The Village alternatively contends that the "undisputed evidence received by the trial court" at the temporary-injunction hearings establishes that Hill has no "viable taking claim arising out of the City's prohibition of short-term rentals." Because the Village seeks dismissal on sovereign immunity grounds here without the trial court ruling on the jurisdiction issue, *Rusk State Hospital* teaches that the relief sought by the Village, i.e., dismissal by this Court, is only appropriate if (1) the record conclusively negates jurisdiction, or (2) Hill did not establish jurisdiction and either she "had full and fair opportunity in the trial court to develop the record" or she "would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded." 392 S.W.3d at 96.

The Village argues that two factors are relevant to the determination of whether Hill has established a regulatory taking under the "unreasonable

interference" theory of recovery: economic impact and regulatory interference with investment back expectations. *See Mayhew*, 964 S.W.2d at 935–36. Hill acknowledges the relevance of these two factors, but notes that the courts have rejected applying a formularized test, such that the analysis can vary from case to case. *See City of Houston v. Maguire Oil Co.*, 342 S.W.3d 726, 736 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

*Economic impact*: The Village quotes *Mayhew*'s explanation that the "economic impact of the regulation merely compares the value that has been taken from the property with the value that remains in the property. The loss of anticipated gains or potential future profits is not usually considered in analyzing this factor." 964 S.W.2d at 935–36 (citing *Andrus v. Allard*, 444 U.S. 51, 66, 100 S. Ct. 318, 327 (1979) (because "[p]rediction of profitability is essentially a matter of reasoned speculation that courts are not especially competent to perform, . . . the interest in anticipated gains has traditionally been viewed as less compelling than other property-related interests.")). From this, the Village argues that evidence about Plaintiffs' anticipated future short-term rental income is not relevant to the determination of the "economic impact of the City Ordinance No. 05-14-02 on the fair market value of their properties." Because Plaintiffs can only show that their property is worth at most 10% more if short-term rentals are permitted and because the Plaintiffs' homes are worth more now than what Plaintiffs paid for them, the

31

Village contends that the evidence demonstrates no economic impact on their property.

Baggs testified that demand for short-term waterfront rentals is strong. She opined that a house that can be used for short-term rentals can be sold for more money, and be sold faster, than one that cannot be used for short-term rentals. She also explained that some of her clients depend on the income from short-term rentals, and could not afford their vacation houses otherwise. She testified to her belief that the ability to rent short-term is a valuable real property interest.

Hill testified that she bought her house in early 2007 for $300,000, and that she has made substantial improvements to the house, although she was unable to quantify the amount spent on all the improvements or the current value of her house. On cross-examination, she testified that the value of her house was decreased by Hurricane Ike. When asked about the Central Appraisal District's 2014 valuation of her house at $300,000, she testified that she could not determine whether that is a fair estimate because she does not know how that figure was derived.

In 2014, Hill received approximately $25,000 in short-term rental revenue in the first nine months of that year. She testified that if she were denied the privilege of doing short-term rentals, it would cost her "quite a bit of money" and it would cause her "grave financial damages" because she counts on that income to pay for

house, and that she could otherwise not afford it. She further testified that her property would "lose value greatly" if she could no longer do short-term rentals and that the ability to do short-term rentals would enable to her to obtain a premium price for her property. When pressed about how much it would increase the price, she testified that she would rely on an appraiser, real estate agent, and accountant to come up with that number.

This unobjected-to temporary-injunction-hearing testimony is some evidence of the "economic impact," i.e., value taken from the property as compared to the value remaining in the property, *Mayhew*, 964 S.W.2d at 935–36, of Ordinance 05-14-02. Both Hill and Baggs testified that an inability to rent short-term would reduce the value of Hill's house. And although the Village insists that we cannot factor into our analysis evidence about the Hill's loss of future rent income, the supreme court has rejected this absolute view. *Sheffield Dev. Co.*, 140 S.W.3d at 677 ("The City argues that evidence of lost profits should be ignored, but we agree with the court of appeals that lost profits are clearly one relevant factor to consider in assessing the value of property and the severity of the economic impact of rezoning on a landowner."). We are mindful that in both *Mayhew* and *Sheffield Development*, the court cautioned that the government does not guarantee profitability of land and that purchasing and developing real estate carries with it financial risks that the government is not obligated to prevent.

33

*Mayhew*, 964 S.W.2d at 935–38, *Sheffield Dev. Co.*, 140 S.W.3d at 677. But both *Mayhew* and *Sheffield* involved zoning changes that scuttled *future* real-estate development, which is more speculative (and the resulting lost value harder to quantify) than the proven profitable short-term rentals that Hill was already engaged in at the time Ordinance 05-14-02 was enacted. *See Mayhew*, 964 S.W.2d at922; *Sheffield Dev. Co.*, 140 S.W.3d at 660.

*Investment Backed Expectations*: The Village argues that the testimony at the temporary injunction hearings also demonstrates that Ordinance 05-14-02 does not interfere with Hill's investment-backed expectations because (1) the Ordinance permits Plaintiffs to use their property "for the purpose for which it was constructed and used" prior to their acquisition, i.e., "a single family residence," (2) long-term rentals of the properties is a reasonable use of Plaintiffs' houses, and (3) the Mayor's testimony established that any interference with investment backed expectations was reasonable in light of concerns about parties, loud noise complaints, and parking.

The Village cites *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) for the proposition that it is the use of the property *prior* to Hill's purchase that should be the focus of our analysis. It notes that there "is no evidence that the City's actions have affected any use of the property prior to Hill's purchase of the property." And it reasons that Hill's home was built for the

"purpose" of a single family residence, such that Hill cannot have an investment-backed expectation in its use for short-term rental. The Village cites no authority its assertion that use for short-term rentals renders a house something other than a "single-family residence." In any event, we disagree that *Hearts Bluff Game Ranch* instructs us to look to the house's use prior to Hill's purchase instead of her existing use at the time the zoning regulations changed to determine Hill's expectations. The supreme court in *Hearts Bluff Game Ranch* explained that ""[t]he existing and permitted uses of the property constitute the 'primary expectation' of the landowner that is affected by regulation." 381 S.W.3d at 491 (quoting *Mayhew*, 964 S.W.2d at 936.) In that case, the plaintiff landowners purchased wetlands on a site that the Texas Water Development Board (TWDB) had identified as a potential water reservoir location. *Id*. at 473. The plaintiff then sought a permit from the Army Corps of Engineers for a mitigation banking permit. *Id*. The Corps denied the permit because of the TWDB designation. *Id*. The plaintiff then sued the State and the Corps of Engineers for "interfering with its asserted right to commercially develop the land as a mitigation bank." *Id*. In evaluating whether the plaintiff had shown that the State or Corps interfered with its reasonable investment expectations, the supreme court discussed the current and known prior uses of the land:

> Because Hearts Bluff's property is bottomland, its uses are more
> limited than other lands. There are other plausible uses of its land,

35

e.g., the existing uses for hunting and fishing, although Hearts Bluff noted that the other possible uses would likely not justify the price that it paid for the land. Hearts Bluff argues that the mitigation banking program is a profitable venture and its loss of the expectation of obtaining a valuable mitigation bank at the site is actionable. But this seems to be a risk common to land developers. *See Sheffield*, 140 S.W.3d at 677. . . . .

. . . .

Concerning its investment expectations, Hearts Bluff alleges that the State has caused it substantial damage since it can no longer use its property as a mitigation bank. . . . The record does not clearly indicate all the uses of the parcel prior to Hearts Bluff's purchase. However, there is no evidence before us indicating that the State's actions in this case, whether it be communicating with the Corps or designating Marvin Nichols as a unique site, have affected any previously existing uses of the property. Hearts Bluff still has every use of the land available to it other than participation at this time in a federal mitigation banking program.

*Heart's Bluff Game Ranch*, 381 S.W.3d at 490–91. Here, while the record does not contain evidence about the specific use of Hill's house prior to her purchase in 2007, the record does reflect that short-term rentals have long been done in Tiki Island, and that Hill was doing short-term rentals for seven years before Ordinance 05-14-02 was passed. She made the decision to purchase this house based on representations about her ability to rent it out short term, and she relies on the income from some rentals to pay for the house. This is evidence of a reasonable investment-backed expectation of an ability to do short-term rentals.

The Village contends that the ordinance is "reasonable" because houses can be rented long-term under the ordinance, and because the evidence shows that

short-term rentals have a negative impact on the community.[6] The Village cites several out-of-state cases for the proposition that its "classification and prohibition of the short-term rental of residential properties is reasonable." While each of these cases do involve prohibitions on uses of real property, they are each distinguishable on their facts from the evidence presented here. Moreover, none support the Village's assertion that Hill does not have reasonable investment-backed expectation in her existing use of her house for short-term rentals; indeed, not all even involve takings claims. *See Jackson Court Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1080–81 (5th Cir. 1989) (affirming summary judgment that city's adopting prohibition on time-share developments did not amount to a takings; buyer of apartment complex testified that he was aware the city was considering banning time-shares before he purchased the apartment complex with plans for a later conversion to a time-share complex, and that he believed—pre-purchase—that there were alternative viable uses of the property, including continuing as an apartment complex); *Aamodt v. City of Norfork*, 682 F.3d 735, 736–37 (8th Cir. 2012) (affirming summary judgment rejecting challenges to short-term rental ban; no taking claim was alleged—case only involved plaintiff's assertion that amendment to ordinance was improperly filed by

---

[6] The Village does not acknowledge the evidence that short-term rentals have the benefit to homeowners of their being able to use the home as a second, vacation home while collecting short-term rental income to pay for the house.

the city with the City Clerk instead of the County Recorder and that City should have filed a map with the amendment); *Neumont v. Florida*, 610 F.3d 1249, 1254 (11th Cir. 2010) (affirming dismissal of takings claim challenging vacation-rental restrictions because plaintiffs had failed to first challenge the restrictions in state court, which the court held was an exhaustion prerequisite to filing a federal constitutional challenge); *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 832–33 (Ind. 2011) (affirming summary judgment that homeowner's short-term rental of home violated ordinance; no taking claim was alleged—case only involved disagreement over language of ordinance); *City of Venice v. Gwynn*, 76 So.3d 401, 404 (Fla. 2d Dist. App. 2011) (reversing circuit court decision holding that restrictions limiting short-term rentals of house to three times per year were unconstitutional as applied to homeowner; court held that lower court had failed to apply correct standard by not comparing value of property before and after restrictions were enacted and by not comparing difference in potential rental income before restrictions and after restriction); *Jackson & Co. (USA), Inc. v. Town of Avon*, 166 P.3d 297, 299–300 (Colo. App. 2007) (affirming injunction prohibiting owner from using house as a lodge for short-term rentals; no taking claim was alleged—court held that house's use as a lodge was prohibited by original subdivision plat filed 23 years before house was purchased by current owner seeking to use it as a lodge); *Ewing v. City of Carmel-By-The-Sea*, 234 Cal.

App. 3d 1579, 1591–92 (1991) (affirming judgment that zoning ordinance prohibiting short-term rentals did not violate homeowners constitutional rights with no discussion about individual homeowner's situations or evidence); *Brown v. Sandy City Bd. Of Adjustment*, 957 P.2d 207, 211–12 (Utah Ct. App. 1998) (reversing summary judgment in favor of City prohibiting homeowner's from renting homes short-term under ordinance; no taking claim was alleged—court held that language of ordinance did not prohibit short-term rentals).

The one Texas case cited by the Village, *Baird v. City of Melissa*, 170 S.W.3d 921 (Tex. App.—Dallas 2005, pet. denied) is likewise inapposite. In *Baird*, the City of Melissa concluded that Baird's RV park was not in compliance with applicable ordinances. 170 S.W.3d 923–24. Baird, who bought the RV park in 1996, argued that operation of the park was not prohibited by any regulation or, alternatively, that the city should be equitably estopped from terminating her use of the property as an RV park. *Id*. at 925. The trial court granted summary judgment in favor of the city, and the Dallas Court of Appeals affirmed. *Id*. The case did not involve a takings claim, and the court held that the property's use as an RV park was prohibited by ordinances that had been in effect for at least five years before Baird bought the property and that none of the equitable defenses advanced by Baird applied. *Id*. at 925–28.

In sum, Hill presented evidence that enactment of Ordinance No. 05-14-02 had an economic impact on the value of her property, and that she had a reasonable, investment-backed expectation that she could engage in short-term rentals. Hill's allegations and evidence, taken as true and construed liberally in her favor, establish a viable taking claim for which the Village's sovereign immunity is waived. *City of Anson v. Harper*, 216 S.W.3d 384, 393 (Tex. App.—Eastland 2006, no pet.) (affirming denial of plea to the jurisdiction based on City's prior acts because "Plaintiffs' allegations and extrinsic evidence, when taken as true and construed liberally in their favor, are sufficient to establish a potential takings claim"); *see also State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010) ("Sovereign immunity from suit does not protect the State from a claim under the takings clause.").[7]

## B. Declaratory Judgment

Although the Village's first issue argues only that Plaintiffs have not demonstrated a waiver of sovereign immunity as to their takings claim, the argument section of its brief also asserts that the trial court does not have subject-matter jurisdiction over Hill's claim for declaratory judgment because the claim (1) is not ripe, (2) merely recasts the relief sought by Plaintiffs under their takings

---

[7] We do not opine on the reasonableness of the short-term rental ordinance or whether Hill can ultimately establish a regulatory takings. Our holding here is limited to the conclusion that Hill presented sufficient evidence to support the trial court's finding of a probable right of recovery.

claim, and (3) Plaintiffs have not shown they served the attorney general with notice of action under Texas Civil Practice and Remedies Code section 37.006(b).

Hill responds only to the argument that Plaintiffs' claims are not ripe.

Plaintiffs' petition recites the following related to their declaratory judgment action:

> Plaintiffs bring this suit under provisions of Texas Civil Practice & Remedies Code, Sec. 37.002 *et seq.*, for Declaratory Judgment finding that Ordinance No. 05-14-02 passed by the Board of Aldermen of Tiki Island on May 20, 2014, be declared to be invalid and unenforceable. Alternatively, Plaintiffs seek a finding that said Ordinance is in violation of the Texas Constitution Art. 1 Sec. 17. Plaintiffs seek relief under the Declaratory Judgment Act for an early adjudication of their rights.
>
> The act of the Board of Aldermen of Tiki Island, Texas, in passage of Ordinance 05-14-02, amounts to the inverse condemnation of Plaintiffs' properties and should be found to be unenforceable and to be stricken as it relates to the declaration that short-term/weekend-end rentals are unlawful and strictly prohibited.

As relief, Plaintiff seek judgment that "Ordinance 05-14-02 be declared to be unlawful, unenforceable, and be dissolved as to Plaintiffs, for declaration that Plaintiffs' properties have been wrongfully taken."

"The Uniform Declaratory Judgments Act does not enlarge a court's jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction." *City of Paris v. Abbott*, 360 S.W.3d 567, 577 (Tex. App.—Texarkana 2011, pet. denied). The Village cites *City of Anson v. Harper*, 216 S.W.3d 384, 395 (Tex. App.—Eastland 2006, no pet.) in support of its argument

41

that "because the declaratory relief merely recasts the relief sought by Plaintiffs under their takings claim, . . . it is therefore not justiciable or ripe."

We agree with Hill that *City of Anson* does not support the Village's claim that Hill's request for declaratory relief is not ripe. In *City of Anson*, the court held that both the plaintiffs' takings claim and their claim for declaratory judgment based on future, uncertain acts of the City were not ripe. 216 S.W.3d at 395 ("We have previously held that plaintiffs' takings claim was not ripe to the extent that it relied upon the construction of a landfill because the City had not yet received a TCEQ permit. For the same reason, plaintiffs' declaratory judgment action is not ripe to the extent it seeks an adjudication of the parties' rights if a permit is granted and if the City proceeds with its landfill plans.") Here, Hill is not seeking a declaration dependent on future actions; she seeks a declaration related to the constitutionality of Ordinance 05-14-02 as applied to her. The Village has not established that this claim is not ripe.

*City of Anson* does, however, support the Village's argument that the trial court lacks subject-matter jurisdiction over a declaratory-judgment action that mirrors a takings claim, even when the takings claim is viable. *Id*. at 395. The court in *City of Anson* held that the plaintiffs' takings claim based upon actions *previously* taken on the property were viable claims over which the trial court had jurisdiction. *Id*. at 393. But the court held that the trial court lacked jurisdiction

over plaintiffs' declaratory judgment action based on the same previous acts by the City because plaintiffs "merely restate[] their takings claim." *Id.* at 395.

Here, there is no disagreement between the parties about the scope or interpretation of Ordinance 05-14-02; the only dispute is over whether application of the ordinance amounts to a takings. Because Hill's Declaratory Judgment Act claim merely restates her takings claim, we hold that the trial court lacks jurisdiction over her request for declaratory judgment.

In sum, we overrule the Village's first issue as to Hill's takings claim and sustain the Village's first issue as to Hill's declaratory judgment action.

## TEMPORARY INJUNCTION

In its second issue, the Village contends that that "the trial court erred in enjoining the enforcement of Ordinance No. 05-14-02 because the Plaintiffs failed to allege or demonstrate an irreparable injury to a vested property right."

The decision to grant or deny a temporary injunction lies in the sound discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of discretion. *TMC Worldwide, L.P. v. Gray*, 178 S.W.3d 29, 36 (Tex.App.—Houston [1st Dist.] 2005, no pet.). We do not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id.* (citing *Johnson v. Fourth Ct. App.*, 700 S.W.2d 916, 918 (Tex.1985)). In reviewing an order granting or

denying a temporary injunction, we draw all legitimate inferences from the evidence in a manner most favorable to the trial court's order. *Id.* (citing *CRC–Evans Pipeline Int'l v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ)). Abuse of discretion does not exist if the trial court heard conflicting evidence and evidence appears in the record that reasonably supports the trial court's decision. *Id.* (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Myers*, 927 S.W.2d at 262).

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id.* at 36 (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*. (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

The only specific challenge the Village lodges at the trial court's temporary injunction is that "to the extent that the Plaintiffs complain about Ordinance No. 05-14-02 making it a violation for a person to operate a short term rental residence punishable up to $500, this court lacks jurisdiction to enjoin enforcement of the Ordinance." It does not dispute that the trial court has jurisdiction to determine if application of the ordinance to Hill amounts to a takings, but argues that the trial

court lacks jurisdiction to grant injunctive relief. Specifically, citing *State v. Morales*, 869 S.W.2d 941 (Tex. 1994), it argues that a "court of equity does not have jurisdiction to enjoin the enforcement of a penal ordinance or statute unless (1) it is unconstitutional and (2) it threatens vested property rights with irreparable injury."

We agree with Hill that the facts of *Morales*, and the concerns expressed by the majority of the supreme court in that case, were fundamentally different than those presented here. *Morales* involved a challenge to a Penal Code provision making sodomy a criminal offense in Texas. 869 S.W.2d at 942. The trial court had declared the criminal statute to be unconstitutional and permanently enjoined its enforcement. *Id.* The supreme court reversed and remanded to the trial court with instructions to dismiss for lack of jurisdiction. *Id.*

The *Morales* court delineated the limits of the civil court's jurisdiction over penal statute as follows:

> [A] civil court has jurisdiction to declare constitutionally invalid and enjoin the enforcement of a criminal statute only when (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, *or* (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights.

*Id. Morales* explained the two most critical failings in the trial court's exercise of jurisdiction over the plaintiffs' challenge to the sodomy statute were that (1) the

right allegedly impinged upon was a personal right, rather than a property right, and (2) even the plaintiffs acknowledged that prosecution under the statute was unlikely. *Id.* at 946–49. In contrast, this case involves a property right, and the Village has already issued a citation to Hill.

The Village first argues that here there is "no pleading or demonstration of unconstitutional conduct" because "the undisputed evidence shows that no plaintiff can assert a viable taking claim because there is no total taking or unreasonable interference with any Plaintiff's reasonable investment backed expectations." For the same reasons that we rejected that argument in the sovereign-immunity context, we hold that Hill's pleadings and evidence sufficiency raise a constitutional challenge to the application of Ordinance No. 05-14-02 to meet the first requirement under *Morales*.

The Village next argues that "no Plaintiff has shown a vested property right was threatened with irreparable harm." In support, it cites *City of University Park v. Benners*, 485 S.W.2d 773 (Tex. 1972), *Hang On III, Inc. v. Gregg County*, 893 S.W.2d 724 (Tex. App.—Texarkana 1995, writ dism'd by agr.), and *City of La Marque v. Braskey*, 216 S.W.3d 861 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Hill argues these cases are distinguishable. We examine each case in turn.

46

*Benners* did not address the question of whether a civil court of equity could enjoin a criminal ordinance. It considered a commercial business owner's takings challenge to a zoning ordinance that reclassified its neighborhood from commercial to residential. *Benners*, 485 S.W.2d at 775–76. The ordinance contained a provision allowing existing businesses to continue their business for 25 years to allow recoupment of their investment. *Id.* at 775. The supreme court rejected the plaintiff's argument that she "held a vested right to use the lots for commercial purposes which could not be constitutionally abridged by a subsequently enacted zoning ordinance, regardless of the reasonableness of the exercise of the police power and of the period allowed for recoupment of the investment in the commercial improvement." *Id.* at 776. The court reasoned that there is "no difference in kind between terminating a land use which predates a zoning change, with allowance for recoupment, and restricting future land uses not presently utilized." *Id.* at 779. It explained that the "former requires no more than that the property owner be placed in the equivalent position of the later, i.e., that he be afforded an opportunity to recover his investment in the structures theretofor placed on the property." *Id.*

In *Hang On*, the appellant—a restaurant featuring nude dancers—appealed the denial of a temporary injunction to stay enforcement of a new ordinance regulating sexually oriented businesses while it sought a declaration that it was not

a sexually oriented business. 893 S.W.2d at 725–26. The ordinance required permits for new and existing business, and allowed for continued operation while a permit was sought and allowed existing businesses to apply for an extension to operate if the owner demonstrated the need to recoup his investment. *Id.* at 726. The court in *Hang On* cited *Benners* for the proposition that a property owner "does not acquire a constitutionally protected right in a property use merely because it began as a conforming use later rendered nonconforming." *Id*. at 727 (citing *Benners*, 485 S.W.2d at 778)). But the court's actual holding was that, by arguing at the temporary injunction hearing only that it was not a sexually oriented business, and not presenting evidence that the ordinance was unconstitutional or that its enforcement would cause irreparable harm, the restaurant had not shown it was entitled to a temporary injunction. *Id*. at 727.

In *Braskey*, this Court reversed a permanent injunction entered by a trial court, following a jury verdict, in favor of a landowner operating a cat shelter, Mamma Cat, who had been issued citations under a new Kennel Location Ordinance for operating too close to other residences. 216 S.W.3d at 862. The plaintiff sued for a declaration that the Kennel Location Ordinance did not apply to her shelter and that, if it did, its enforcement amounted to an "ex post facto application and constitutes unlawful taking of property in violation of the due process cause [sic] of the U.S. Constitution." *Id*. "The irreparable harm claimed

48

by Braskey was that enforcement would cause her facility to close, the death of cats housed at the Momma Cat, possible fines levied against her, her possible confinement, and her expenditure of attorney's fees." *Id.*

In reversing the trial court's permanent injunction for lack of jurisdiction, we noted that these asserted harms "all concern the use of her property as a facility for cats," and we cited *Benners* for the proposition that "Braskey's use of her property as a facility for cats is not a constitutionally protected vested right because it concerns only the way that her property is used, which is not an absolute right." *Id.* at 864. Finally, we explained that "the municipal court is the proper court to hear Braskey's challenges to the ordinance." *Id.* (citing *Morales*, 869 S.W.2d at 945 (if the meaning and validity of a penal ordinance can be determined by a criminal court and no vested property rights are in jeopardy, "[a] person may continue his activities until he is arrested and then procure his release by showing that the law is void").

At first blush, this case appears most similar to *Braskey*. We conclude, however, that *Braskey* is distinguishable on its facts.

*Braskey* and *Hang On* cite *Benners* for the proposition that "property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made." *Brenners*, 485 S.W.2d at 779. *Braskey* further analyzes the meaning of "vested" in this context:

49

The issue here is not whether Braskey had a property right in the facility, but rather whether *her use* of the facility, as a cat shelter, was a vested property right.

Property owners do not have a constitutionally protected vested right to use real property in any certain way, without restriction. *See City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972) (holding "that property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made"). . . . A right is "vested" when it "has some definitive, rather than merely potential existence." *Tex. S. Univ. v. State Street Bank and Trust Co.*, 212 S.W.3d 893, 903 (Tex. App.— Houston [1st Dist.] 2007, no pet. h.); see also BLACK'S LAW DICTIONARY 1595 (8th ed. 2004) (defining "vested" as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute"). Braskey's use of her property as a facility for cats is not a constitutionally protected vested right because it concerns only the way that her property is used, which is not an absolute right. *See Benners*, 485 S.W.2d at 778; *Weatherford*, 157 S.W.3d at 483; *Hang On*, 893 S.W.2d at 726. Braskey's asserted harms—the closing of her facility, the death of cats housed at the facility, possible fines levied against her for operating the facility, her possible confinement for operating the facility, and her expenditure of attorney's fees to pursue continued operation of the facility—all concern the use of her property as a facility for cats, which is not a constitutionally protected vested right. *See Benners*, 485 S.W.2d at 778; *Weatherford*, 157 S.W.3d at 483; *Hang On*, 893 S.W.2d at 726.

*Braskey*, 216 S.W.3d at 863–64.

Although *Benners* does hold that a property owner does not have a vested right in a particular *use* of their property, implicit in its analysis is the recognition of a narrow vested—i.e., complete, noncontingent—right when a new law restricts an existing commercial use of a property. 485 S.W.2d at 778. *Benners* held that zoning regulations prohibiting existing commercial uses "under reasonable

conditions" are within the scope of municipal police power. *Id*. It deemed an ordinance's permitting existing businesses to recoup their investment to be a reasonable, and legally equivalent, alternative to allowing unfettered continuation of the existing business use. *Id*. at 777–78. The court then concluded that, given the property owner's evidence and the 25 year recoupment period afforded by the ordinance, "[i]t is evident that the owners of the property were given sufficient time in which to terminate the commercial uses and to recoup any loss in property value occasioned by the reclassification of the lots from commercial use to residential use." *Id*. at 779.

The ordinance at issue in *Hang On* remained faithful to these principals by allowing continuation of preexisting sexually oriented businesses while the owner seeks newly required permits, and it allowed extensions to be granted if the property owner shows a need to recoup business investment. 893 S.W.2d at 725–26. When Ordinance 05-14-02 was passed in 2014, it likewise avoided running afoul of certain property owner's vested rights by grandfathering their 2011 existing use of their homes for short-term rentals. In contrast, Braskey's use of her property as a cat shelter did not implicate these principles at all, as she complained of regulation preventing use of her property to house cats, not investment losses or loss in the value of her property. *Braskey*, 216 S.W.3d at 864–65.

51

Hill has been renting her Tiki Island home short-term since 2007. She bought it as an investment for the purpose of rentals, and made substantial improvements to the property. Tiki Island's 2014 ordinance banning short-term rentals grandfathered certain identified properties that were already engaged in short-term rentals as of 2011. It is not evident from the record why Hill's use of her home for short-term rentals was not grandfathered, as she was engaged in short-term rentals before the 2011 grandfathering cut-off. The Village's excluding Hill from this grandfathered status, however, foreclosed Hill's existing investment use of her property without an avenue for recoupment. We thus hold that she has identified a vested right for purposes of conferring the trial court with jurisdiction to enter a temporary injunction in her favor.

Hill alleged, and introduced evidence of, unique concrete imminent harm to her investment and business activities that cannot be redressed on direct appeal from a criminal prosecution, such as potential breach-of-contract liability to short-term renters she has contracts with for future dates. We thus hold that the trial court had jurisdiction over Hill's request for injunctive relief.

## CONCLUSION

We hold that we lack jurisdiction over the Village's challenge to the trial court's temporary injunction order in favor of the Ronquille and Changs. We also

hold that the trial court lacked jurisdiction over Hill's declaratory judgment action.

We otherwise affirm the trial court's temporary injunction in Hill's favor.



Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.